## WILLIAM B. CAVANAH *v.* THE STATE.

1. CRIMINAL PROCEDURE. *Summoning special venire.*
   In executing a special *venire facias*, ordered under sect. 2759 of the Code of 1871, in a capital case, the sheriff may make a list of the persons to be summoned from the assessment-roll, and give it to his deputies, with instructions to summon them and any others whom the deputies may meet that are suitable, and he is not bound to go out into his county and summon every man he meets, liable to jury service, taking them by chance, until the required number are summoned.

---

Brief for plaintiff in error.

---

2. SAME. *Change of venue.*

On application for a change of venue in a capital case, "by reason of undue prejudice in the public mind," it is proper for the court to call and examine witnesses, to satisfy itself whether such prejudice exists that the accused cannot have a fair and impartial trial in the county.

3. CRIMINAL LAW. *Evidence. Contradicting witness by former statement.*

To lay the foundation for contradicting a witness for the State, in a capital case, by the testimony he has given on a former investigation, which is in writing, that written testimony must be presented to the witness, and it is improper to ask him if he has so testified, without allowing him to inspect the written testimony.

4. SAME. *Instructions. Repetition.*

The refusal of instructions asked for the accused in a capital case is justified by the fact that the doctrine announced by them is contained in those already given.

5. SAME. *Trial. Argument of counsel. Scope thereof.*

Where the counsel for the State, in a capital case, so abuses his privilege in argument and comment on the testimony — as, by misstating facts, or commenting on facts not in evidence — as to induce the belief of probable injustice as a result, the Circuit Court should interfere, and if it does not, this court will reverse; but it is a very delicate duty, and much discretion must be allowed the circuit judge. This court will not reverse because in a capital case, involving a question of duelling, the State's attorney read extracts from a work on that subject, or even because he read an essay of his own on the same subject.

6. SAME. *New trial. Testimony of one jointly tried and acquitted.*

That one of the parties jointly indicted and tried is acquitted, so that his testimony can be had for the convicted one on another trial, is not alone sufficient ground for a new trial, where the verdict ought not to be different as to the prisoner upon the whole testimony, including the facts stated in the affidavit of the acquitted party as the facts to which, on a new trial, he will testify.

ERROR to the Circuit Court of Lowndes County.

Hon. J. M. ARNOLD, Judge.

The plaintiff in error was convicted of murder, and he sued out a writ of error, and assigned as the grounds of error the points indicated in the opinion of the court.

*Beverly Matthews*, for the plaintiff in error.

1. The motion of defendant to quash the special *venire facias* returned by the sheriff in this cause should have been sustained by the court below. The sheriff should have made his selection from the body of the qualified persons in his county indiscriminately, as opportunity allowed, looking only to intelligence and

moral worth and general fitness for that service, and certainly in
a spirit of fairness and impartiality equal to that which would
have pervaded his duty had the names been drawn from the
county jury-box.    The method of taking them from the tax-
books does not appear.    If the sheriff could possibly be placed
within the range of a sinister motive, he secured ample means
for its gratification in the minutest details by the method which
he adopted.    We make no imputations upon conduct or motive
in this case, but assail the mode of executing the order of the
court as illegal, and full of peril to parties accused of crime.
The selection of the *venire* to try the defendants is as objec-
tionable as if it had been chosen within prearranged geo-
graphical boundaries.    *Shaffer* v. *The State*, 1 How. 245.

2. The application for a change of venue should have been
granted.    As far as public sentiment and opinion had been ex-
plored by the witnesses, it was decidedly unfavorable to the
accused.    Two only, out of the six witnesses examined, had
heard sympathy expressed for the unfortunates.    All stated
that public opinion was unfavorable.    Public opinion is usually
understood to comprehend the sentiment and feeling of at
least a majority of the population.    It is the dominant senti-
ment, — not all-pervading, but controlling.

3. The prisoner in vain protested against an original essay on
the subject of duelling, and also to extracts read from an
author named Sabine, on duels and duelling, by the learned
counsel who was employed by private parties to prosecute on
behalf of the State.    No duel had been fought, and no chal-
lenge had been accepted, and whatever had been in the mind
of any of the parties upon that subject, the proof showed, had
been entirely dismissed.    It was an extraordinary proceeding,
and violated the decorum of the court.    Said extracts are
extraneous, foreign, and highly inflammatory.    If counsel,
against objection, persevere in arguing to the jury upon pertinent
facts not before the jury, or appealing to prejudices foreign to
the case in evidence, this, on exceptions duly taken, may be
good ground for a new trial, or for a reversal, and the judg-

ment herein should be reversed on such ground. *Brown* v. *Swineford* (Sup. Ct. Wis., January term, 1878), Cent. L. J. 208 (September 13, 1878) ; *Hennies* v. *Bogle* (Sup. Ct. Ill.), 7 Cent. L. J. 18 ; *Tucker* v. *Henniker*, 41 N. H. 318 ; *Berry* v. *The State*, 10 Ga. 512 ; *Mitchum* v. *The State*, 11 Ga. 633 ; *The State* v. *Smith*, 75 N. C. 306 ; *Ferguson* v. *The State*, 49 Ind. 33.    The worst criminal is entitled to be judged by the law, and if his conviction is secured by means of a perversion of the law, the injury to the cause of public justice will be more serious and lasting in its results than his being allowed to escape altogether.    Cooley's Const. Lim. 34.    We can-. not think an advocate of high standing and character has a right to endeavor to rob the jury of their opinion by asseverating his own belief in the innocence of his client.    *Ib.* 335.

4. The court erred in refusing a new trial, and disallowing the testimony of John W. Cavanah after his acquittal.    It is well settled that where several defendants are tried at the same time, and some are acquitted and some convicted, the court may grant a new trial as to those who are convicted, in order that they may have the benefit of the testimony of those acquitted upon such new trial, provided they show a case of so much merit and diligence on their part as to entitle them to a new trial. 1 Arch. Cr. Pr. & Pl. 653, citing *The State* v. *Ayer*, 3 Fost. 301 ; *Campbell* v. *The State*, 9 Yerg. 333 ; 3 Gra. & Wat. on New Tr. 1107.    In 3 Graham and Waterman, p. 1107, the rule is to grant a new trial where the evidence of the acquitted co-defendant can be corroborated by other testimony, or if his evidence will be likely to change the verdict.    See also *Rich* v. *The State*, 1 Texas Ct. App. 206 ; *Huebner* v. *The State*, 3 Texas Ct. App. 463 ; *Jones* v. *The State*, 13 Texas, 168 ; *Lyles* v. *The State*, 41 Texas, 172 ; *Williams* v. *The State*, Texas L. J. 323 (June 12, 1878), and also referred to in the Reporter of November 12, 1878 ; *Rex* v. *Mawbey*, 6 Term Rep. 638 ; *Jones* v. *The State*, 1 Kelly, 617 ; *United States* v. *Henry*, 4 Wash. 429 ; 10 Johns. 95.    A co-defendant acquitted or convicted, if not rendered infamous by

conviction, is a competent witness for his associates.    Whart. Am. Cr. Law (4th ed.), 795 ; *Ballard* v. *Noaks*, 2 Pike, 45 ; *Carpenter* v. *Crane*, 5 Blackf. 119 ; *Moss* v. *The State*, 17 Ark. 330 ; *Brown* v. *The State*, 17 Ark. 627 ; 10 Smed. & M. 226 ; 39 Miss. 192 ; 52 Miss. 216.; 52 Miss. 927 ; *Bohun* v. *Taylor*, 6 Cow. 314.    To avoid the infraction of the principle of law that testimony merely cumulative should not be a sufficient basis for granting a new trial, and to determine with clearness and accuracy the lines of cumulative evidence, this court, in 7 How. 369, said : " That although the newly discovered evidence be intimately connected with some parts of the testimony at the trial, yet if it be specifically distinct, and bear upon the issue, a new trial will be granted."

5. Counsel then reviewed the instructions for the State, insisting that they were erroneous in principle, and the evidence, insisting that it failed to establish murder, and concluded : " *Salus populi suprema lex* is a canon recognized by all the departments of government.    It embraces every thing that promotes the intellectual, moral, and physical well-being of the people.    No attractive civilization can exist without the presence of a courageous manhood, disciplined by the teachings of the Christian era.    We submit that the forbearance of the defendant, as shown by this record, was attenuated to this standard, and that he finally struck, not upon his own account, but to save his brother, who had been suddenly set upon by a lion.    Sow the State down in the salt of humility and submission demanded by the verdict in this cause, and no green thing of her former proud civilization will remain.    Instead of standing upon the pyramid of her sunlit history, kindling into enthusiasm the patriotism and love of her children, we shall behold her become unfit for the conditions of peace or war, and among her sister States wearing the robe of a pitiable social and political emasculation."

*Reuben Davis*, on the same side, filed a brief arguing the same points, and citing the following authorities :

1. On the motion to grant a new trial, that J. W. Cava-

nah might testify: *Keithlen's Case*, 10 Smed. & M. 192;
*Fitzcox* v. *The State*, 52 Miss. 926; *Dick's Case*, 30 Miss.
593; *George's Case*, 39 Miss. 570; *Staroben and Grizzle* v.
*The State*, 37 Miss. 422; *The State* v. *Spencer*, 15 Ind. 349;
1 Bishop's Cr. Proc., sects. 1082, 1104, 1106, note 2; *Peck*
v. *The State*, 2 Humph. 78; *Leak* v. *The State*, 10 Humph.
444; 7 Humph. 499–554; *Cicely's Case*, 13 Smed. & M. 202;
*Browning's Case*, 4 Ga. 48; *McDaniel's Case*, 9 Smed. & M.
4; *The State* v. *Mitchell*, 64 Mo. 191; *Brown* v. *The State*,
64 Mo. 367.

2. On the improper reading of the essay and book on duel-
ling: *Perkins* v. *Grey*, 55 Miss. 183.

3. On overruling the motion to quash the special venire:
Code 1871, sects. 736–743.

4. On the application for change of venue: Code 1871,
sect. 2762.

5. The counsel contended that the prisoner should have
been allowed to contradict the witness by proving his state-
ment on the former hearing.

6. Counsel also argued the evidence and the instructions at
length, contending that the latter were erroneous and the
former did not support the verdict, citing numerous authori-
ties in support of these views.

*Reuben Davis* and *H. L. Jarnagin*, of counsel for the plaintiff
in error, argued the case orally.

*T. C. Catchings*, Attorney-General, for the State.

1. The court was right in sustaining the special *venire
facias*. The sheriff's action was entirely proper. He is
charged with no fraud, unfairness, or corruption. Code 1871,
sect. 743; *Logan's Case*, 53 Miss. 435.

2. In overruling the motion for a change of venue, the
court did not abuse the discretion vested in it by sect. 2762 of
the Code of 1871. Acts 1874, p. 55.

3. The reading of the original essay by counsel for the
State, and of the work on duelling, as he did not misstate
facts, was a matter which the circuit judge in his discretion

could control, and there appears to have been no impropriety in the court permitting counsel to proceed with the line of argument complained of.

4. The verdict was right upon the evidence, and the instructions are law.

5. There is no reason why a new trial should be granted, that J. W. Cavanah may testify. If his evidence was needed, a severance should have been applied for, and must have been granted. To permit a new trial because one jointly indicted is acquitted, would render a new trial a matter of right in many cases of clear guilt. The facts which J. W. Cavanah would swear to, if proved, should not change the verdict. The authorities hold that, in such a state of case, a new trial will not be granted. *Shay* v. *The Commonwealth*, 36 Pa. 309 ; *The State* v. *Merrill*, 10 Pick. 16 ; *United States* v. *Gilbert*, 2 Sumn. 97 ; *The State* v. *Bean*, 36 N. H. 122 ; *The Commonwealth* v. *Chancey*, 2 Ashm. 98 ; *The People* v. *Vermilia*, 7 Cow. 369 ; Whart. Cr. Law, sects. 3341, 3359, 3360. But if the defendant wished to use his brother as a witness, he should have demanded a severance, and then they would have stood separately indicted. *Anthony* v. *The State*, 2 R. I. 308 ; *The People* v. *Labra*, 5 Cal. 184 ; *Moffit* v. *The State*, 2 Humph. 99 ; *Brown* v. *The State*, 18 Ala. 496 ; 6 Mo. 1 ; *Marshall* v. *The State*, 8 Md. 498 ; *Hunt* v. *The State*, 10 Md. 69 ; 3 Russ. on Cr. 625 ; 1 McCord, 286.

A new trial will not be granted on the ground of new or additional testimony, unless the party used due diligence to obtain it on the first trial. *Cooper's Case*, 53 Miss. 393. The defendant made no effort to have his brother's testimony on his trial, and he cannot now ask for a new trial for that purpose. If he had moved for a severance, and stated the necessity for it, the court would doubtless have granted him a separate trial; but if not, he would have been in a condition to ask a new trial. *The Commonwealth* v. *Eastwood*, 1 Mass. 15. Whether on a separate trial the co-defendant would have

been competent or not, the defendant might have asked a severance, and that his co-defendant be first tried, and after being first tried he would have been clearly competent.

6. No foundation was laid for contradicting the witness by his statements made in a previous investigation. His written testimony should have been given to him before inquiring of him whether he had made certain statements.

*T. C. Catchings*, Attorney-General, also argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The Circuit Court did not err in refusing to quash the *venire facias*.

It was ordered in accordance with the statute applicable to such a state of case (Code, sect. 2759), and, so far as the record informs us, it was executed in a proper manner by the sheriff.

The objection urged is, that the sheriff resorted to the assessment-roll to aid him in making a list of persons to be summoned in obedience to the *venire facias*, and prepared a list of names of persons, and handed it to his deputies, with directions to summon those persons and any others whom the deputies might meet with who were suitable, and that the persons summoned were those whose names were on the list thus made, and a few others summoned by the deputies in accordance with the directions of the sheriff. It is not claimed that there was any corruption or partiality on the part of the sheriff, or that he did not summon good jurors; but it is insisted that the precedent selection by the sheriff of those who should be summoned was improper, and that calling to his aid, in making this selection, the tax-books, was inadmissible; and that he should have gone out into the county, in person or by deputies, and should have summoned every man he met who was liable to jury service, passing by none, but taking them by chance and indiscriminately, and thus he should have summoned the required number. We cannot adopt this view. As it was the duty of the sheriff to "sum-

mon '' the specified number of jurors, he had the right to select the persons to be summoned, and he could lawfully make a list of the names of such persons beforehand, and it is not material whether he made it by the aid of books, in his office or elsewhere, or from his memory. The only limitation on his power was his duty to be impartial, in obedience to the command of the writ. The true question is, whether he obeyed the *venire facias* in good faith and with fairness. We must look to the result, and not to the means of reaching it, except as those means may have affected the result. It seems to us that the many names on the assessment-roll would be of great aid to the purpose to obtain from the body of the county a number of jurors, and that it was a wise precaution of the sheriff to provide a list to facilitate the summoning of the required number, and it is not charged that he had any other object in view.

It was not error to refuse the application for a change of venue.

It was proper for the court, by calling witnesses and examining them, to satisfy itself whether, '' by reason of undue prejudice in the public mind,'' the prisoners could not have a fair and impartial trial in the county. *Weeks* v. *The State*, 31 Miss. 490; *Mask* v. *The State*, 32 Miss. 405.

Looking to the evidence on this subject, we fail to discover any ground to believe that there existed in the public mind that '' undue prejudice '' meant by the statutes, — *i.e.*, such as would be likely to be so felt in the jury-box as to prevent the accused from having a fair and impartial trial by the evidence and the law.

There is no error in the several rulings by the Circuit Court upon questions of evidence. If it was the purpose of counsel for the prisoner to lay the foundation for contradicting a witness by the testimony he had given on a former investigation, which was in writing, that written testimony should have been presented to the witness; and it was not proper to ask him if he had so testified, without allowing him to inspect the written

testimony. 1 Greenl. on Ev., sect. 465 ; 1 Whart. on Ev., sect. 68.

A careful inspection of the instructions given by the court to the jury, and those asked for the defendants and refused, has convinced us that the prisoner has nothing to complain of in this respect. Forty-two instructions were asked of the court, and sixteen were given for the State and eighteen for the defendants. In numbers, the defendants had the advantage, and on the score of liberality they had no ground of complaint. Every principle which could be invoked in their behalf, couched in language the most favorable and effective which learning, experience, and ingenuity could command, was embraced in the instructions given for the defence. The instructions for the State are correct ; and as mere numbers do not constitute error, although very apt to embrace it, we are not authorized to reverse the judgment on account of the instructions. The refusal of a few of the instructions asked by the prisoner is justified by the fact that the doctrine announced by them is contained in those given, or is not sound.

The counsel for the State, who made the opening argument to the jury, read as part of his argument an essay of his own on duelling, and certain extracts from Sabine on Duels and Duelling. This was objected to by counsel for the prisoner, and the court was called on to stop this course of argument, but declined to do so ; and this was excepted to, and is assigned for error here.

The " essay " of the counsel is represented by the bill of exceptions as " containing a vivid description of the results of different duels, and the fate of successful parties engaged therein, and also the ruin to families of said parties ; " and the " extracts " from Sabine on Duels and Duelling, after laying down the rule " amongst gentlemen " as to blows, insults, and apologies, give account of the after life of one who had killed his adversary in a duel, which is represented to have been one of great unhappiness to himself and family.

It is a just supposition that the counsel for the State was led

to the course of argument mentioned, by the evidence in this case of the course of the prisoner in his correspondence with the deceased, and the proceeding to "post him"' afterwards. We are not prepared to say that an argument directed against duelling was not pertinent to the case, and appropriate. The circuit judge must have thought so, and the record does not show that he erred in this respect. The record suggests that the theory of the defence was that the prisoner, who had been beaten by Cameron, went to Crawford to obtain redress in the mode usual "amongst gentlemen," and that he sent him, by a friend, a formal demand for an unconditional written apology or a meeting for mortal combat, and as this was refused, he was proceeding to "post" Cameron as a coward, when the occurrences took place which resulted in the killing of Cameron. Prisoner sought to show that he did not kill Cameron in pursuance of the previous difficulty, but that he had obtained satisfaction for that by the correspondence with Cameron, and after "posting him" the matter was to be dismissed from mind by the prisoner, and he was no longer to seek redress from Cameron, whom he was thereafter to ignore. This theory of the defence is so connected with the subject of duelling that a dissertation on that subject may not be said to have been inappropriate. Undoubtedly, there is a limit to the latitude to be allowed to counsel in addressing a jury, and it is the duty of the court to interfere to prevent an abuse of the privilege of counsel, to the perversion of justice, by misstating facts or commenting on facts not in evidence. A large discretion in this matter must be exercised by the circuit judge. It is a very delicate duty; for he must be cautious not unduly to abridge the liberty of counsel, and, in restraining him within proper limits, must not deny him the full liberty of discharging *his* important duties, in enforcing his views of the law and the evidence. "His illustrations may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination."

Where the privilege of counsel had been abused to such an extent as to induce the belief of probable injustice as its result, and the court below had not properly interposed, we would not hesitate to apply the corrective; but in this case we see no ground for interference. The evidence demanded a verdict of guilty of murder, and we must suppose that the jury responded to the evidence, and were not unduly or improperly influenced by the argument made on the subject of duelling. The acquittal of John W. Cavanah is decisive evidence that the jury was not " carried away" by the eloquence of counsel for the State, and was ready to take the most favorable view for the defendants.

The motion for a new trial is based on the fact that one of the parties indicted and tried was acquitted, and that his testimony can be had for the prisoner on another trial, and will change the verdict rendered on the former trial, and cause his acquittal. We do not consider this as, *per se*, a ground for a new trial. It is to be considered. It is an important element, and may be entitled to much weight as one circumstance in determining a motion for a new trial, but it has no higher character than this. In some cases it would be more persuasive than in others. In no case is it alone sufficient to entitle a party to a new trial. Each case must be determined by its circumstances, and the new trial granted or refused according to the view taken of the whole evidence, in connection with the evidence of the acquitted party, now made competent as a witness for the other. Applying these views to this case, and considering the affidavit of John W. Cavanah, the acquitted party, in connection with all of the evidence on the trial, we entertain the opinion that the new trial was properly refused. The verdict ought not to be different as to the prisoner upon the whole testimony, including the facts stated in the affidavit of John W. Cavanah.

Without special mention of the other questions raised by the record, it is sufficient to say that we have carefully con-

sidered the eleven bills of exception, and the forty-two instruc-
tions asked, and the fifteen grounds of error assigned here,
and have failed to find any ground on which to disturb the
judgment, and it is therefore affirmed.