82    31
s82   19

WHITTINGTON OWENS *v.* STATE OF MISSISSIPPI.

CRIMINAL LAW.   *Change of venue.   Code* 1892, § 1411.   *Two offenses.*

Where a defendant is indicted in the same county for two offenses and is entitled to a change of venue for the trial of one of them, under code 1892, § 1411, regulating the subject, he should on his application be granted a change of venue for the trial of the other, if the connection between the offenses be such that the prejudgment, grudge or ill-will which entitled him to the change granted, operate adversely to him in the other case, although the commission of the crime therein charged did not produce such prejudgment, grudge or ill-will.

FROM the circuit court of Lafayette county.

HON. PERRIN H. LOWREY, Judge.

Owens, appellant, was indicted and convicted of murder, and appealed to the supreme court.    The facts are stated in the opinion of the court.

For a history of appellant's several trials, see *Owens* v. *State, ante,* 19; *Owens* v. *State,* 80 Miss., 499; *Matthis* v. *State,* 80 Miss., 491, and the footnote to last case, at page 493.

*H. D. Stephens,* for appellant.

Under the facts, appellant was clearly entitled to a change of venue.    The condition of the public mind in Lafayette county was so adverse to him that it was with difficulty that he was protected from a mob.    The court below, because of the prejudgment of his case by the people of that county, and the grudge and ill-will borne towards him by that people, adjudged

that appellant was entitled to a change of venue in the cases against him for killing the Montgomerys.

In the present case, where the change of venue was denied appellant, the witnesses are the same as those against him in the Montgomery cases; there is a decided connection between the causes. If appellant be guilty, all three of the murders were committed in pursuance of a common design. It is true the offense in the present case was committed before the Montgomerys were killed, and that the killing of Williams attracted but little public attention, and that the prejudgment of appellant and the grudge and ill-will borne against him by the people did not come into existence until after the Montgomerys were murdered, but it all exists now, and existed with great intensity when the change of venue in this case was applied for by appellant. It is impossible to separate the cases in the public mind. The court below had a wrong conception of the law of the case. It proceeded upon the idea that a change of venue should be denied, no matter how much prejudice, prejudgment, grudge, of ill-will might be entertained by the public against appellant, unless such prejudgment, ill-will, etc., grew out of the particular charge to be tried. No conception could be more erroneous. Any conception is erroneous which will turn an accused over to a howling mob of infuriated men for execution, although the process be called a trial.

*W. V. Sullivan,* on same side.

[Mr. Sullivan's brief was withdrawn or lost from the record before it reached the reporter.]

*William Williams,* attorney general for appellee.

The testimony shows that there was a sentiment in the county of Lafayette against appellant on account of the murder of the Montgomerys, but that the murder of Hampton Williams and appellant's connection with same had been discussed very little, and the testimony offered for and against the application for a

change of venue shows beyond a doubt that the murder of Hampton Williams attracted but little attention.

"In reviewng the action of the circuit court in refusing defendant's application for a change of venue where a motion for a new trial has been overruled, and the whole evidence in the record, this court will not look alone to the evidence before the court on the application for a change of venue, but will judge from the whole case whether an impartal trial was had." *Cheatham* v. *The State,* 67 Miss., 335.

If there was no abuse of the discretion vested in the trial court, this court should not reverse the judgment of the trial court on this application and motion. *Stewart* v. *The State,* 50 Miss., 587; *Bishop* v. *The State,* 62 Miss., 289.

The record shows that after the examination of about forty-five persons, the jury of twelve had been empaneled and was accepted by both the state and the defendant. The court's attenton is directed to the fact that in empaneling the jury, appellant exercised only seven peremptory challenges.

It is submitted that every case should stand upon its own merits, and that the facts in this case show that appellant was tried by a fair and impartial jury. If this contention is true, then the third assignment of error is not tenable.

Argued orally by *H. D. Stephens* and *W. V. Sullivan,* for appellant, and *William Williams,* attorney general, for appellee.

TERRAL, J., delivered the opinion of the court.

The appellant, Whittington Owens, was convicted in the circuit court of Lafayette county of the murder of Hampton Williams, and was sentenced to be hanged. From that sentence he takes this appeal.

One of the principal grounds of complaint which he makes is the refusal of the court to grant him a change of venue for the trial of said cause. The present indictment against Owens related to the killing of Hampton Williams, who was accidentally

shot and killed by Orlando Lester, in the effort to kill Walter Jones. The killing of Williams created but little agitation in the public mind, but the killing of John A. and Hugh Montgomery, two officers of the law, committed not long thereafter, created great excitement. Owens was also indicted for their murder, which was committed in the process of arresting William Matthis, also charged jointly with Owens and Lester in the commission of the offense. Now, Hampton Williams was killed in the effort to kill Walter Jones, who was a witness against Lester, Matthis, and Owens, one or all, for the unlawful distillation of spirituous liquors. There seems, therefore, to have been a general connection of purpose in the attempted killing of Walter Jones and the killing of the Montgomerys. The several killings were a part of a scheme to rid Lester, Matthis, and Owens of all prosecution for the unlawful distillation of liquors. All these crimes were committed in Lafayette county, and were there triable accordng to the rules of law. Upon the killing of the Montgomerys, great agitation arose in the county. The defendant, with others, was arrested and carried to Oxford, the county seat. Great masses of citizens assembled there, and much excitement prevailed. A special term of the circuit court was immediately called. Indictments were found aganst Owens for the murder of the Montgomerys, and for the murder of Hampton Williams. Upon the application of Owens, a change of venue was properly granted to him as to the cases against him for the murder of the Montgomerys, but his application for a change of venue in the Williams case was overruled.

We are not able to escape the conclusion that all the reasons that support the judgment of the court for a change of venue in the two Montgomery cases exist also in reference to the Williams case. The statute (code 1892, § 1411) gives three grounds for change of venue: (1) A pre-judgment of the case; (2) a grudge; and (3) ill will to the defendant. Now, it must be admitted that ill will or a grudge to the defendant may grow out of matters not intimately connected with the case, and inde-

pendent of any relation of the case of the killing of Williams to the cases of the killing of the Montgomerys. We think a change of venue should have been granted. There is yet a close relation between the alleged murder of Williams and the murder of the Montgomerys. If in no other aspect they are closely related, they are very much alike in the evidence offered for the conviction of the defendant. There is no direct proof that Owens was connected with either crime; his relation to each crime is made up of the evidence of Lester and of William Matthis. Therefore, if the excitement and pre-judgment of the Montgomery cases existed in these cases, it must have found full and free scope for its operation in the Williams case, as soon as the evidence upon which it was based was laid before the court and jury. It is conceded that pre-judgment existed in the Montgomery cases, and it existed in these cases merely because Orlando Lester and William Matthis declared him the moving spirit that compassed their death. Why, then, did not this spirit of pre-judgment in the public mind catch a new flame as soon as the public saw it had a foundation as potent in the Williams case as it had in the Montgomery cases — a foundation in the one case exactly like the foundation in the other — the murder of Williams and the murder of the Montgomerys having for its purpose a riddance of Matthis, Lester, and Owens, one or all, of any prosecution for unlawfully distilling liquor?

In *Cavanah* v. *The State,* 56 Miss., 307, it was said that the "undue prejudice" meant by the statute was such as would be likely to be so felt in the jury box as to prevent the accused from having a fair and impartial trial by the evidence and the law. We cannot doubt but that the jury box would have felt the influence of the public pre-judgment against Owens in his trial for the murder of the Montgomerys, and its influence was equally prevalent on his trial in the case before us.

*Reversed and remanded.*