**Alvin HILL, Petitioner–Appellee Cross–Appellant,**

v.

**Lee Roy BLACK, Commissioner, Mississippi Department of Corrections, et al., Respondents–Appellants Cross–Appellees.**

No. 87–4922.

United States Court of Appeals, Fifth Circuit.

Oct. 10, 1989.

Rehearing and Rehearing En Banc Denied Dec. 12, 1989.*

* See 891 F.2d 99.

514

Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., for respondents-appellants cross-appellees.

James P. Kreindler, Daniel M. Kolko, New York City, and Percy Stanfield, Jackson, Miss., for petitioner-appellee cross-appellant.

Before CLARK, Chief Judge, and POLITZ and GARWOOD, Circuit Judges.

CLARK, Chief Judge:

## I.

On November 26, 1980, a jury of the Circuit Court of Desoto County, Mississippi, found Alvin Hill guilty of capital murder and sentenced him to death. The Supreme Court of Mississippi upheld both the verdict and the sentence on direct appeal. *Hill v. State*, 432 So.2d 427 (Miss.1983), *cert. denied*, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983). Two subsequent petitions to the Mississippi Supreme Court for Writ of Error Coram Nobis were denied. *In re Alvin Hill*, 467 So.2d 669 (Miss.1985); *In re Alvin Hill*, 460 So.2d 792 (Miss.1984). Hill then petitioned the United States District Court for the Northern District of Mississippi for a Writ of Habeas Corpus. The district court granted the writ on condition that it would become operative in 180 days unless within that time the State of Mississippi retried the sentencing phase of Hill's conviction and sentence proceedings. 667 F.Supp. 314. The district court denied the writ as it pertained to the jury's guilty verdict. The State of Mississippi appealed the conditional writ to this court. We withheld decision of this appeal pending resolution of a principal issue in *Sawyer v. Butler*, 881 F.2d 1273 (5th Cir.1989) (en banc).

For the reasons detailed below, we reverse the district court's conditional grant of the writ as to sentencing and affirm its denial of the writ as to guilt.

## II.

On July 12, 1979, a truck owned by American Freight Lines was hijacked in Desoto County, Mississippi, and its driver, Robert Lee Watkins, was shot to death. Four days later a similar incident occurred in adjoining Tunica County, Mississippi, involving the hijacking of a packing company truck and the robbery of its driver. An investigation into these incidents ensued.

Between 12:00 p.m. and 4:00 p.m. on July 18, a Special Agent of the F.B.I. searched Alvin Hill's pick-up truck and found a U–Haul rental contract for a truck with Maryland license plate number M91196. The agent testified that Hill consented to this search at about 5:00 p.m. that evening, after the search had taken place. Another witness testified that he had seen a U–Haul van with Maryland license number M91196 parked near the hijacked American Freight Lines truck on July 12.

On or about July 20, 1979, Hill and Sammy Lee Hampton were arrested for the Tunica County hijacking and robbery. On July 19, 20, and 25, another F.B.I. Special Agent questioned Hill concerning the Desoto County hijacking. That agent informed Hill that a statement made by Hampton implicated Hill in that hijacking. On August 17, investigators informed Hill that Desoto County deputy sheriffs had found Watkins' body. On the next day, while still in custody for the Tunica County hijacking, Hill confessed to the Desoto County hijacking and to the robbery and murder of Watkins. After initially stating that he had thrown the murder weapon into the Coldwater River, Hill later told officials that the pistol was in the possession of a man who lived in Memphis. Memphis police officers retrieved the pistol from the man Hill identified, who stated he had loaned the weapon to Hill. Hill's confession was ruled involuntary and inadmissible. The trial court, however, allowed the murder weapon into evidence.

After pleading guilty to the Tunica County hijacking, Hill was sentenced to 20 years imprisonment, and Hampton was sentenced to 17 years. Hill, Laverne Milam and Gregory Tucker were indicted for the capital murder of Watkins under Miss.Code Ann. 97–3–19(2)(e). Tucker pled guilty to manslaughter and testified against Hill. The jury returned a verdict of guilty and unanimously recommended the death penalty.

### III.

Hill alleged twenty-three counts of error in his habeas corpus petition. On appeal, the State of Mississippi challenges the three allegations of error on which the district court based its conditional grant of habeas corpus. On cross-appeal, Hill challenges the district court's denial of his remaining allegations of error.

### A. The Application of the Mississippi Contemporaneous Objection Rule

Before the Mississippi Supreme Court and in his writ for federal habeas corpus, Hill alleged that the prosecution's examination of Tucker, Hill's co-defendant, concerning Tucker's conviction of manslaughter in the Desoto County hijacking and the prosecution's use of a "last word" argument in closing were each reversible errors. The prosecutor told the jury that their decision on Hill's verdict and sentence would not be the "last word" on the matter because the decision would be appealed. Defense counsel did not object to this argument. Nor did counsel object to Tucker's testimony. Rather, on cross-examination counsel developed the details of Tucker's plea bargain and manslaughter conviction to demonstrate that his crucial testimony against Hill should be viewed as untrustworthy by the jury.

The Mississippi Supreme Court decided that because Hill raised no objection to either of these prosecution activities at trial, he was barred from alleging on appeal that they constituted error. *Hill v. State,* 432 So.2d 427, 438–39. The district court's grant of habeas corpus relief on these two grounds was based on the conclusion that "the contemporaneous objection rule had not been consistently applied in death penalty criminal cases in Mississippi as late as 1984 and that application of this procedural rule prior to this time in Mississippi death penalty cases can only be characterized as the exception rather than the rule." *Hill v. Thigpen,* 667 F.Supp. 314 (N.D.Miss.1987). We disagree.

A survey of the cases in which the Mississippi Supreme Court either applied the contemporaneous objection rule or suspended the rule as an "act of grace" in particular cases, *Bass v. Estelle,* 705 F.2d 121 (5th Cir.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983), demonstrates that the Mississippi rule has been "consistently or regularly applied" as required by *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) and *Barr v. City of Columbia,* 378 U.S. 146, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964). An analysis of the complete jurisprudence of Mississippi reveals that the Supreme Court regularly applies the contemporaneous objection rule to the cases before it. That Court also consistently follows a policy of disregarding the rule when plain error is involved. Thus, the Court often reviews the merits of errors to which no underlying objection was made at trial if the nature of the case and the nature of the alleged error combined or separately could affect fundamental justice. *Voyles v. State,* 362 So.2d 1236 (Miss.1978), *cert. denied,* 441 U.S. 956, 99 S.Ct. 2184, 60 L.Ed.2d 1059 (1979). The Court is more inclined to suspend the rule in capital cases and in appeals asserting erroneous jury instructions, involuntary statements or confessions, or highly prejudicial remarks by the prosecution. *Smith v. State,* 419 So.2d 563 (Miss.1982), *cert. denied,* 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983); *Gray v. State,* 375 So.2d 994 (Miss.1979), *cert. denied,* 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847 (1980); *Culberson v. State,* 379 So.2d 499 (Miss.1979), *cert. denied,* 449 U.S. 986, 101 S.Ct. 406, 66 L.Ed.2d 250 (1980); *Myers v. State,* 268 So.2d 353 (Miss. 1972). Errors which, if the defendant's allegations are true, constitute plain error are reviewed even though they could properly be dismissed under the contemporaneous objection rule.

This plain error exception to universal application of the procedural bar does not render the application of the rule haphazard or arbitrary. Rather, the case law reveals that the rule and exception are applied in a regular and consistent fashion. *Johnson,* 108 S.Ct. at 1987; *Barr,* 378 U.S. at 149, 84 S.Ct. at 1736. "A state may insist upon a contemporaneous objection.

And, ordinarily, a federal habeas court is bound by that decision and cannot reach claims of error found by the state to have been waived." *Dugger v. Adams,* —— U.S. ——, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989). Here, the Mississippi Supreme Court observed its established practice when it decided not to review the merits of Hill's allegations of error in the prosecution's use of co-conspirator Tucker's testimony and in the prosecutor's "last word" closing argument because plain error was not involved.

### (1) *The Co–Conspirator's Testimony*

■ The testimony of Tucker that he had been convicted of manslaughter in the Desoto County hijacking would usually constitute error in Mississippi. *Hill v. State,* 432 So.2d at 439. Defense counsel, however, did not merely choose not to object to the testimony. He cross-examined Tucker and made use of his testimony to show the jury that "a radically different treatment had been extended by the state to Tucker than that proposed for Hill. The defense sought mileage out of this concession in cross-examination." *Hill v. State,* 432 So.2d at 439. Having used the testimony extensively for his own purposes, Hill cannot complain on appeal that introduction of the evidence was plain or even reversible error.

■ Hill also argued before the district court that the introduction of evidence pertaining to Tucker's manslaughter conviction without an accompanying explanation to the jury of the plea bargain agreement of which this conviction was a part constituted constitutional error under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Giglio had been convicted of passing forged money orders. The evidence against Giglio consisted largely of the testimony of his co-conspirator, Taliento. When Giglio's counsel cross-examined Taliento, Taliento denied that he had been involved in any plea bargaining negotiations with the government prosecutors. In fact one prosecutor, without authority and without the knowledge of his colleagues, had offered Taliento immunity

from prosecution if he would testify against Giglio. The Supreme Court held that because of Taliento's false testimony, the plea bargaining negotiations were effectively withheld from Giglio's jury. Chief Justice Burger stated:

Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.

405 U.S. at 154–55, 92 S.Ct. at 766.

In Hill's case, however, defense counsel was fully advised of and made extensive use of the fact that Tucker had plea bargained with the State and that because of his bargain he had been convicted of manslaughter instead of murder. Defense counsel argued that because Tucker had "bargained for his life," he was not to be believed. Although the State did not detail the plea bargaining agreement to the jury, the defense revealed its every essential part. No false testimony, bad faith, or suppression of the truth was involved. Hill made full use of his due process right to know of his co-conspirator's plea bargain and to impeach Tucker's testimony. No *Giglio* error is present.

### (2) *The "Last Word" Argument*

■ The United States Supreme Court decided in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), that the use of a "last word" argument which may lead the jury to believe its decision regarding punishment is anything less than a crucial final decision or that their decision is anything but "the serious one of determining whether a specific human being should die at the hands of the State," *Caldwell,* 105 S.Ct. at 2640, is, if uncorrected, plain error. Therefore, if *Caldwell* applies to Hill's appeal, the Mississippi contemporaneous objection rule should not have barred Hill's appeal on this point.

Hill's conviction became final at least by November 7, 1983, the denial date of his petition for certiorari to the United States Supreme Court. *Hill v. Mississippi,* 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983); *see Sawyer v. Butler,* 881 F.2d 1273 (5th Cir.1989) (en banc). *Caldwell* was decided on June 11, 1985. The question is thus presented whether the *Caldwell* "last word" decision should apply retroactively to Hill's appeal.

For this answer we turn to two recent cases, *Teague v. Lane,* — U.S. —, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Sawyer v. Butler,* 881 F.2d 1273 (5th Cir.1989) (en banc). In *Sawyer* we state: *"Teague's* rule precludes habeas petitioners from seeking to overturn their convictions on the basis of rules new by comparison with the date their convictions became final." Two exceptions to this rule exist:

> "First, the petitioner may rely upon a new rule if it would place 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' *Teague* [109 S.Ct.] at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 1175, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part)). The Court has since declared that this first exception also applies to rules which exempt certain persons entirely from capital punishment. *Penry v. Lynaugh,* [— U.S. —], 109 S.Ct. 2934, 2944 [106 L.Ed.2d 256] (1989). Second, the petitioner may rely on a new rule requiring the observance of 'those procedures that ... are "implicit in the concept of ordered liberty."' *Teague,* 109 S.Ct. at 1073, quoting *Mackey,* 401 U.S. at 693 [91 S.Ct. at 1180] (opinion of Harlan, J.) (inside quote from *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152 [82 L.Ed. 288] (1937) (Cardozo, J.))."

*Sawyer,* 881 F.2d at 1279. After thorough discussion, *Sawyer* concludes that the *Caldwell* "last word" ruling is a new constitutional rule of criminal procedure under *Teague.* The en banc court states: "We have little difficulty in concluding that so measured, *Caldwell's* greatly heightened intolerance of misleading jury argument is a new rule within the meaning of *Teague."* *Id.* Following this precedent, and because Hill's allegations of error do not come within the stated exceptions to the *Teague* rule, *Caldwell* does not apply retroactively to Hill's appeal and cannot characterize the argument made here as plain error.

 In today's case, the prosecutor responded to the defendant's closing argument by saying to the jury:

> I knew that the attorneys would attempt to place a heavy burden on you. They would have you believe that you're voting to kill the Defendant and that he's going to be taken outdoors here in ten minutes and hung. That's not so, and they know that's not so, and that's unfair. That's totally unfair. They know your word is not the last word. They know that.

There was no objection by the defense. The trial court made no comment on the argument then or later. Neither the content nor the procedural context in which the argument was set were as extensive or as egregious as that before the court in *Caldwell* or in *Sawyer.* The single statement made here was condemned as clearly erroneous by the Mississippi Supreme Court, but that court held appellate relief was precluded by its contemporaneous objection rule. The single statement of the prosecution did not rise to the level of plain error.

### (3) *Conclusion*

Neither the prosecutor's argument in Hill's case nor the codefendant Tucker's testimony discussed in part (1) above would have justified the Mississippi Supreme Court in applying the exception to the Mississippi contemporaneous objection rule to either allegation of error. Accordingly, the district court erred in granting habeas corpus relief based on the Mississippi Supreme Court's application of the Mississippi procedural bar rule.

### B. Instructing the Jury on their Option to Return a Life Sentence

 The district court also found that the instructions given Hill's jury did not

"clearly instruct the jury about mitigating circumstances and the option to recommend against death," as is required by *Chenault v. Stynchcombe*, 581 F.2d 444, 448 (5th Cir.1978). Hill's jury was instructed:

You must unanimously find beyond a reasonable doubt that the preceding aggravating circumstances exists in this case to return the death penalty. If no element is found to exist, the death penalty may not be imposed and you shall write the following verdict on a sheet of paper:

"We, the Jury, find that the Defendant should be sentenced to life imprisonment."

If an element of aggravation is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstance. Consider only the following elements of mitigation in determining whether the death penalty should not be imposed:

(1) Alvin Hill's age at the time of the capital murder.

(2) Alvin Hill did not commit this murder in an especially heinous, atrocious, and cruel manner.

(3) Any other fact which you find from the evidence that reasonably mitigates against the imposition of the death penalty.

If you find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether they outweigh the aggravating circumstances you previously found, and you must return one of the following verdicts. The verdict you return must be written on a separate sheet of paper.

1.) "We, the Jury, unanimously find that the aggravating circumstance or circumstances of: _____

_____ outweigh the mitigating circumstances and are sufficient to impose the death penalty, and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we unanimously find that the Defendant should suffer death."

Foreman of the Jury

2. "We, the Jury, find that the Defendant should be sentenced to life imprisonment."

3. "The Jury has been unable to agree unanimously on punishment."

The defense proffered an instruction that provided: "You need not find any mitigating circumstances in order to return a sentence of life imprisonment. A life sentence may be returned regardless of the evidence." This instruction was denied. The state argues that the district court should be reversed because the jury was clearly instructed that it could rely on any and all mitigating factors present in the case in returning a sentence of life imprisonment. But this argument misses defendants' point that the instructions given did not inform the jury of their discretion to return a life sentence even if they found one or more aggravating factors while finding no mitigating factor. In fact, the State's argument highlights the crucial fault of the instruction as viewed by the defense. The emphasis on balancing aggravation and mitigation made it easier for the jury to logically conclude that their decision required a strict balancing process in which the absence of mitigation forced them to return a death sentence.

In this habeas corpus action, the question presented to the district court was whether federal constitutional standards require that the jury be able to return a life sentence when one or more aggravating factors but no mitigating factor was found. At trial, Hill's objection to the trial court's refusal to grant his requested instruction relied on the following statement in *Jackson v. State*, 337 So.2d 1242, 1256 (Miss. 1976): "The jury shall not be required to make a special finding of any mitigating circumstances in order to return a verdict that the accused should be sentenced to life in prison." The *Jackson* guidelines, however, have been replaced by statute in Mississippi. *Jordan v. Watkins*, 681 F.2d 1067, 1078 (5th Cir.1982); *see* Miss.Code Ann. 99–19–101 (1988). The current Mississippi death sentence statute directs the jury in its consideration of aggravating and

mitigating factors without specifically stating that the death penalty may be returned if aggravating factors are present, but no mitigating factor is found. The instructions to Hill's jury closely followed the Mississippi statutory language.

In *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), the Supreme Court reviewed a Texas death penalty case in which the jury had been allowed to consider mitigating factors only through their responses to two "Special Issues" asked by the trial judge in accordance with the Texas death penalty statute. The court asked the jury to decide whether the defendant committed murder "deliberately and with the reasonable expectation that the death of the deceased or another would result," and whether "there is a probability that [the defendant] would commit criminal acts of violence that would constitute a continuing threat to society." 108 S.Ct. at 2324 n. 3. The court informed the jury that if they answered "yes" to both questions, the defendant would be sentenced to death. They did, and the death sentence was imposed. The defendant urged in his habeas corpus petition that the Texas statutory scheme did not allow the jury to consider relevant mitigating factors. In affirming the denial of habeas corpus relief, the Court stated: "The jury was completely free to give that evidence appropriate weight in arriving at its answers to the Special Issues." 108 S.Ct. at 2330. The Court continued:

> [T]his Court has never held that jury discretion must be unlimited or unguided; we have never suggested that jury consideration of mitigating evidence must be undirected or unfocused; we have never concluded that States cannot channel jury discretion in capital sentencing in an effort to achieve a more rational and equitable administration of the death penalty.

> Much in our cases suggests just the opposite. This Court has previously held that the States "must channel the [capital] sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance' and that 'make rationally reviewable the process for im-

posing a sentence of death.'" *Godfrey v. Georgia*, 446 U.S. 420, 428 [100 S.Ct. 1759, 1764–1765, 64 L.Ed.2d 398] (1980). 108 S.Ct. at 2331.

Under *Franklin*'s teaching, the Mississippi trial court was not required to specifically instruct the jury that it could return a life sentence even if it found aggravating factors but no mitigating factor during the sentencing phase of Hill's trial. The Mississippi statute and the instructions given in this case provided far more focused and channeled consideration of aggravating and mitigating factors than did the Texas instructions analyzed in *Franklin*. The defendant, moreover, was allowed to adduce mitigating evidence, and the jury was instructed to consider any relevant mitigating factor. A more specific instruction, such as Hill proposed here, is not required by either Mississippi law or the federal Constitution. The district court erred in basing its conditional grant of habeas corpus relief on this ground.

## IV.

Although we reverse the conditional grant of relief based on the allegations of error discussed above, we must also consider the errors which Hill asserts on cross-appeal. Hill alleges the district court was mistaken in refusing him habeas corpus relief based on these additional state court errors.

### A. The Admission into Evidence of the Murder Weapon

On August 18, 1979, Hill confessed to the murder of Watkins in the presence of Tunica County Sheriff Monteith, Desoto County Sheriff Sowell, Deputy Biffle and Desoto County Investigator Ward. Hill initially stated that he had thrown the murder weapon, a borrowed pistol, into the Coldwater River. Later the same day, Hill told Investigator Ward that the murder weapon had been returned to its owner, a Mr. Carter of Memphis. On the next day Sheriff Monteith informed the Memphis Police Department that Carter was in possession of the weapon, and the Memphis Police se-

cured the gun from Carter. The gun was subsequently admitted into evidence during Hill's murder trial.

Hill's August 18 confession was ruled inadmissible by the state trial court. Hill now contends that the State would not have recovered the murder weapon but for the inadmissible confession, and that the weapon, as "fruit of the poisonous tree," should not have been allowed into evidence. At trial, Sheriff Monteith testified that his information concerning the true location of the murder weapon was obtained from an interview with Sammy Hampton. If the Memphis Police, acting on Sheriff Monteith's advice, recovered the gun through information Monteith obtained from a source completely independent of Hill's inadmissible confession, then the murder weapon was correctly admitted. *Silverthorne Lumber Company v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920).

The trial record discloses that on November 18, 1980 Sheriff Monteith testified that he had not been present when Hill told Ward of the whereabouts of the murder weapon. Monteith stated that he interviewed Sammy Hampton and that the interview with Hampton led him to seek discovery of the murder weapon in Memphis. On the following day, the state trial court held an in-chambers hearing on the admissibility of the murder weapon. Sergeant Rust of the Memphis Police Department testified that he recovered the pistol from Carter after receiving information from Sheriff Monteith. Alvin Hill testified that he told only Investigator Ward of the Desoto County murder weapon's true location shortly after giving the suppressed confession and that he had never revealed the whereabouts of the weapon to Sammy Hampton or to Sheriff Monteith. Hill indicated he had been confused when Sheriff Monteith testified about the gun on the previous day. He took no exception to the Sheriff's statements at that time because he believed at that time Monteith was referring to the gun used in the Tunica County hijacking.

The trial judge was thus presented with an issue of evidence admissibility based on witness credibility. He could decide from the evidence presented that Monteith had garnered the information on the murder weapon from the independent source he identified, Sammy Hampton, or he could decide that because Hill had never told Hampton about the gun, Monteith was lying and had been told about the gun by Ward. The possibilities also existed that Hill was lying or that Hampton had discovered the gun's location from a source other than Hill. The trial judge concluded as follows:

> The testimony before the Court from Sheriff Monteith given at approximately 4:00 P.M. on November 18th [is] ... that he informed Officer Priddy of the Memphis P.D. where gun could be found after an interview with a person by the name of Hampton, and that he did not know the results of information passed on to the Memphis police officer. During this motion in Chambers, Defendant Hill was called upon to testify for the limited purposes of rebutting testimony of Sheriff Monteith and other officers who had testified primarily as to the recovery of this weapon from a Robert Carter in Memphis, Tennessee, .... The Court understood, and it is now a matter of record, from Defendant Hill that he gave information to Officer Ward about the whereabouts of this weapon out of the presence of Sheriff Monteith, which makes it apparent to the Court that the information passed on to Officer Priddy by Sheriff Monteith was developed by him [Monteith] from some source other than the Defendant, it being contended by Defendant that this information possibly was derived by the Sheriff from the Defendant after and subsequent to the confession which the Court had heretofore suppressed. The Court, therefore, is compelled to overrule the motion now before it in Chambers to suppress the introduction of the Defendant subsequent to the suppressed confession. Gentlemen, I think the record is abundantly clear on that point, and I think all of you will

have to agree that that's what is in the record.

The Mississippi Supreme Court held that the trial judge had before him sufficient evidence on which to base a decision that Monteith learned of the gun's whereabouts from Hampton. The Supreme Court recognized that the defense might have tried to refute this evidence but that the defense did not attempt to do so. *Hill v. State*, 432 So.2d at 434–37. The court held that the decision of the trial judge that the gun was found through information independent of Hill's confession was supported by the record. *Id.* In a later Error Coram Nobis action in the Mississippi Supreme Court, Hill argued that he then had available "newly discovered evidence" to show that Hampton had never spoken to Monteith concerning the murder weapon and that Monteith was not sure who had informed him about the weapon. The court held that the affidavits Hill then sought to introduce were not "newly discovered evidence" because "the petitioner or his attorney knew of the existence of such evidence at the time of the trial, or could have discovered it by the exercise of due diligence." *In re Hill*, 460 So.2d 792, 794 (Miss.1984), quoting *Lang v. State*, 230 Miss. 147, 92 So.2d 670 (1957).

In considering Hill's habeas corpus petition, the district court agreed and ruled that the evidence presented by Hill at the habeas corpus hearing which tended to refute the trial judge's finding was not properly before the district court because the evidence clearly could have been adduced at trial. We agree. "If the evidence asserted in support of the habeas application could have been discovered by reasonable diligence before the conviction, such evidence can support neither a motion for new trial nor a habeas application." *Davis v. Blackburn*, 789 F.2d 350, 352 (5th Cir. 1986), citing *United States v. Robinson*, 585 F.2d 274, 280 (7th Cir.1978) (en banc), *cert. denied*, 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979). This is an evidentiary matter which relies on facts established in the state court record and on findings of the trial judge which are supported by that record. The trial judge decided to admit the murder weapon into evidence only after weighing the credibility and considering the testimony of all witnesses who testified before him. His decision based on evaluations that a trial judge alone is most qualified to make—the credibility of witnesses before him and the legal resolution of the matrix of facts pertaining to the admissibility of evidence presented to him by those witnesses—was properly upheld.

**B. The Evidence of Hill's August, 1979 Escape and Admission of the Statement, "Sammy Will Get His."**

■ Hill escaped from the Tunica County jail shortly before he was charged with the DeSoto County hijacking. He returned voluntarily three days later. The State adduced evidence of this escape at trial. Because Hill raised only state law claims in this portion of his habeas corpus petition, the district court correctly ruled that this issue was not a proper basis for federal habeas corpus relief. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); 28 U.S.C. 2254 (1977).

■ The trial court also allowed into evidence a statement of one of Hill's co-inmates. This witness stated that when Hill was informed that he had been implicated in the Desoto County hijacking by Sammy Hampton, Hill said, "Sammy will get his." Hill admitted making the statement and testified that he meant only that Sammy would be dealt with by the legal authorities. The defense neither objected to this evidence at trial nor raised the issue on direct appeal. It is doubtful that the admission of this evidence caused any actual prejudice to Hill. Even if prejudice resulted and trial tactics are ignored, the most that would be involved would be violation of a state rule of evidence. This would not support a federal constitutional claim and was not, therefore, a proper ground for habeas corpus relief by the district court. *Engle v. Isaac*, 456 U.S. at 119, 102 S.Ct. at 1567.

**C. Hill's Claim of Ineffective Assistance of Counsel**

■ Hill asserts several examples of trial procedures he characterizes as inept-

itude on the part of his original counsel. We affirm the district court's determination that his claim of ineffective assistance of counsel is without merit, and find it necessary to add to the district court's discussion of the claims in only one area.

Hill claimed that his counsel should have objected to the "last word" argument offered by the state in its closing argument. The district court denied that the lack of an objection had prejudiced Hill because the court granted relief on that ground. With our reversal of that grant of relief, the lack of an objection during the prosecution's closing argument must be analyzed on its merits.

To establish a claim of ineffective assistance of counsel, a defendant must show that his counsel was actually deficient and that he was actually prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In demonstrating the deficiency of trial counsel, Hill must show that the actions of his counsel at the time of trial reasonably should have included an objection to the prosecution's "last word" argument. 466 U.S. at 689–90, 104 S.Ct. at 2065–66. Although the Mississippi Supreme Court did not announce that the use of the "last word" argument was error until 1982 in *Howell v. State*, 411 So.2d 772 (Miss.1982), the trial court might have correctly sustained an objection to such an argument at Hill's trial in 1980. The Mississippi Supreme Court based its decision in *Howell* on three Mississippi cases, *Clemons v. State*, 320 So.2d 368 (Miss.1975); *Tudor v. State*, 299 So.2d 682 (Miss.1974) and *Cavanah v. State*, 56 Miss. 299 (1879). Clearly, the precedent which sustained an objection to the "last word" argument in 1982 was in place in 1980. Here there is no retroactive application of *Howell*'s rule. Rather, we merely predict based on then existing precedent that an objection in 1980 would have met with success. Therefore, an attack on Hill's counsel can be based on his failure to object to the "last word" argument.

It is not clear, however, that Hill was prejudiced in any way by the lack of such an objection. The *Strickland* Court held that: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. The Court continued:

> When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

466 U.S. at 695, 104 S.Ct. at 2069. The "last word" argument presented to Hill's jury does not reach that level of prejudice to the defendant. The prosecutor made the following statement in response to an argument of Hill's counsel:

> I knew that the attorneys [for defendant] would attempt to place a heavy burden on you. They would have you believe that you're voting to kill the Defendant and that he's going to be taken outdoors here in ten minutes and hung. That's not so, and they know that's not so, and that's unfair. That's totally unfair. They know your word is not the last word. They know that.

This single response was the only statement made in this vein by the prosecution. There being no objection, the court took no part in the matter. By contrast, in *Howell* the prosecuting attorney was much more specific in his "last word" argument, informing the jury of the defendant's right to appeal and of the supreme court's right to overturn the verdict and "turn him [the defendant] loose." 411 So.2d at 773. The argument in *Howell* included five separate statements made at closing argument. Those statements also included an incorrect statement of law which the Mississippi Su-

preme Court found "could have been very misleading to the jury." 411 So.2d at 777.

Hill only speculates that without the prosecutor's one statement, the jury would have likely weighed the aggravating and mitigating factors of his case differently. Assuming *arguendo* that defense counsel's failure to object evinced ineffectiveness rather than a deliberate choice not to undo the argument he had earlier made, in light of all the evidence presented in the case, Hill's speculation furnishes no proof to establish prejudice. Under the standard of *Strickland v. Washington,* counsel's failure to object at this juncture in the trial did not render their overall performance ineffective.

### D. Other Grounds

The district court denied Hill's allegations of error pertaining to the F.B.I. search of Hill's truck, the refusal of the trial court to order more extensive psychiatric evaluation of the defendant, and the decision not to apply the rule formulated in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) to the selection of Hill's jury. For the reasons stated in the opinion of the district court, we affirm the dismissal of these claims.

### V.

The portion of the district court judgment granting habeas corpus relief is reversed, and the court's remaining denial of habeas corpus relief is affirmed.

REVERSED in part and, in part, AFFIRMED.