IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 90-1599
_____


WILLIAM L. WILEY,

                    Petitioner-Appellant,

v.

STEVE W. PUCKETT, Superintendent,
Mississippi State Penitentiary, and
MIKE MOORE, Attorney General,

                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____

(July 20, 1992)

Before POLITZ, Chief Judge, KING and GARWOOD, Circuit Judges.

KING, Circuit Judge:

     William L. Wiley, a Mississippi prisoner under a sentence of

death, appeals from the district court's denial of his petition

for a writ of habeas corpus.  He raises six distinct issues for

our review, including a claim that his sentence should be

invalidated because it was based in part on the aggravating

circumstance that the murder was "especially heinous, atrocious

or cruel."  After hearing oral argument,[1] we reserved decision

until the Supreme Court determined whether Clemons v.

_____

     [1]  Chief Judge Clark participated in the hearing of this
appeal, but resigned from the court on January 15, 1992.  Judge
Carolyn Dineen King was substituted on the panel.

<u>Mississippi</u>, 494 U.S. 738 (1990), the case upon which the aggravating circumstance claim was founded, could be applied retroactively to persons such as Wiley whose death sentences became final before that decision was issued. The Court has now decided in <u>Stringer v. Black</u>, --- U.S. ---, 112 S. Ct. 1130 (1992), that <u>Clemons</u> did not announce a new rule for purposes of <u>Teague v. Lane</u>, 489 U.S. 288 (1989), and so may be applied retroactively. After receiving supplemental briefing on the effect of <u>Stringer</u>, we are prepared to rule on all of Wiley's claims.


I. <u>BACKGROUND AND PROCEDURAL HISTORY</u>

On August 22, 1981, after J.B. Turner and his daughter closed the convenience store Turner operated in DeSoto County, Mississippi, Wiley emerged from a hiding place and fired three shots from a shotgun. Turner's daughter, Patricia Harvey, was injured, and Turner died on the scene. Wiley took a small money box containing $350 to $400 and fled, leaving the shotgun. Federal agents connected the shotgun to Wiley, and Wiley was eventually arrested in Memphis, Tennessee. Wiley confessed to the robbery and murder and was tried for capital murder.

Wiley was convicted of capital murder, which in Mississippi includes a murder committed in the course of a robbery, and sentenced to death. On appeal, the Mississippi Supreme Court affirmed the conviction, but reversed the death sentence because of improper comments by the prosecutor. <u>Wiley v. State</u>, 449 So.

2d 756 (Miss. 1984).  The second sentencing hearing resulted in a second death sentence.  This time the Mississippi Supreme Court affirmed.  Wiley v. State, 484 So. 2d 339 (Miss.), cert. denied, 479 U.S. 906 (1986) (Wiley II).  Wiley then sought post-conviction relief under the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-1 et seq. (Supp. 1991).  The Mississippi Supreme Court again denied relief.  Wiley v. State, 517 So. 2d 1373 (Miss. 1987), cert. denied, 486 U.S. 1036 (1988) (Wiley III).  The court refused to hear eight of Wiley's claims because they had already been litigated on direct appeal and were thus res judicata under state law.  Id. at 1377. The court refused to hear an additional eight claims on the ground that they had not been raised at trial or on direct appeal and were therefore procedurally barred.  Id. at 1378.  On the only claims open for review, the court held that Wiley had not been deprived of effective assistance of counsel at the trial or sentencing.  Id. at 1382-83.

Wiley then initiated habeas proceedings in federal district court.  The court held seven claims procedurally barred.  It reviewed the remaining claims on the merits, but found that none warranted relief.  In addition, it refused to grant an evidentiary hearing on Wiley's claim that he was denied effective assistance of counsel.[2]  We granted a certificate of probable cause to appeal.

---

[2]  We will describe more fully the district court's holdings in our discussion of those claims presented on appeal.

3

Wiley asks us to review the following issues, all of which relate to the second sentencing hearing:

1. Whether the death sentence is invalid under the Eighth Amendment because (a) the jury was instructed to consider whether the murder was "especially heinous, atrocious or cruel" and (b) the jury found two aggravating circumstances (murder for robbery and murder for pecuniary gain) arising out of the same conduct.

2. Whether the district court erred in holding that Wiley was not entitled to an evidentiary hearing on his claim that he received ineffective assistance of counsel at the sentencing phase.

3. Whether the prosecution's exclusion of all but one black juror from the sentencing jury violated Batson v. Kentucky, 476 U.S. 79 (1986).

4. Whether the prosecutor improperly referred to the character of the victim.

5. Whether several statements made by the prosecutor deprived Wiley of a fair trial.

6. Whether the introduction of photographs of the victim was unduly prejudicial.


## II. AGGRAVATING CIRCUMSTANCES CLAIMS

Under Mississippi law, the jury may impose a death sentence on a person convicted of capital murder if it finds one or more statutorily defined aggravating circumstances, and then determines that the aggravating circumstance or circumstances outweigh any mitigating circumstances. Miss. Code Ann. § 99-19-101 (Supp. 1991). Mississippi is, therefore, what has been termed a "weighing" state. Stringer, 112 S. Ct. at 1136. At Wiley's sentencing, the trial judge instructed the jury, over Wiley's objection, that it could consider four aggravating circumstances. These were (1) whether the capital offense was

4

committed during the commission of an attempt to commit the crime of robbery; (2) whether the capital offense was committed for pecuniary gain; (3) whether the capital offense was especially heinous, atrocious or cruel; and (4) whether the defendant was previously convicted of a felony involving the use or threat of violence to the person. Wiley II, 484 So. 2d at 350. In a written verdict, the jury stated that it found the first three aggravating circumstances. The jury further stated that the mitigating evidence did not outweigh the aggravating circumstances, and accordingly sentenced Wiley to death. Wiley II, 484 So. 2d at 342. Wiley objects that his death sentence is invalid under the Eighth Amendment for two reasons: the "especially heinous" aggravating circumstances was too vague and imprecise to channel the sentencer's discretion, and the robbery and pecuniary gain circumstances were duplicative.

A. "Especially Heinous" Aggravating Circumstance

Nearly two years after Wiley's death sentence became final, the Supreme Court invalidated a death sentence in which the jury had considered the "especially heinous, atrocious or cruel" aggravating circumstance without being given a limiting instruction. Maynard v. Cartwright, 486 U.S. 356 (1988). The Court found, first, that the language of the aggravating circumstance was so vague and imprecise as to risk imposition of the death penalty in an arbitrary and capricious manner. Id. at 364. Second, the Court found that the Oklahoma Court of Criminal Appeals had failed to apply a limiting construction to the vague

5

aggravating circumstance when reviewing the defendant's death sentence. The Oklahoma court's mere conclusion that the evidence supported the jury's finding of the aggravating circumstance was, in the view of the Supreme Court, insufficient to "cure the constitutional infirmity of the aggravating circumstance." Id. Maynard was based in large part on Godfrey v. Georgia, 446 U.S. 420 (1980), in which the Court had identified similar flaws in Georgia's use of the aggravating circumstance that the murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Id. at 422. As in Maynard, the jury in Godfrey had been instructed only in the bare words of the statute and the state supreme court failed to apply a limiting construction to the aggravating circumstance when reviewing the death sentence. See Godfrey, 446 U.S. at 428-29.

Shortly after Maynard was decided, the Court was confronted with the question whether, in a weighing state, infection of the capital sentencing determination with a vague aggravating factor required invalidation of the death sentence. In Clemons v. Mississippi, 494 U.S. 738 (1990), the Court answered this question in the negative but required that an appellate court reviewing the sentence focus carefully on the role the invalid factor played in the process. As in Maynard and the instant case, the Clemons jury had not received a limiting instruction further defining the concept of an "especially heinous, atrocious or cruel" killing. Implicit in the opinion was the assumption

6

that this amounted to constitutional error.  See Stringer, 112 S. Ct. at 1139; Clemons, 494 U.S. at 756 n.1 (Blackmun, J., concurring in part and dissenting in part).  The questions in Clemons were whether the Sixth and Eighth Amendments barred the state appellate court from upholding the death sentence despite the jury's use of a vague aggravating factor and whether, if an appellate court could do so, the Mississippi Supreme Court had conducted the proper analysis of Clemons's sentence.

The Court first concluded in Clemons that nothing in the Sixth or Eighth Amendments prevents an appellate court that has invalidated an aggravating factor from reweighing the remaining valid aggravating factors and the mitigating evidence.  With respect to the argument that this would infringe on a defendant's jury trial right, the Court pointed out that it had never required "that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence."  Id. at 745.[3]  In response to the argument that this would violate the Eighth Amendment, the Court pointed out the numerous ways in which appellate courts become involved in reviewing death

---

[3]  This conclusion rested in large part on Cabana v. Bullock, 474 U.S. 376 (1986), in which the Court had held that an appellate court can make the findings of intent to kill required under Enmund v. Florida, 458 U.S. 782 (1982), for the imposition of a death sentence.  The Court also rejected the subsidiary argument that, because Mississippi law permits only a jury to impose a death sentence, allowing the appellate court to do so would transgress a liberty interest in having a jury make all determinations relevant to the sentence.  Clemons, 494 U.S. at 746-47.

sentences[4] and concluded that appellate courts were capable of giving defendants the "individualized and reliable sentencing determination" demanded by the Eighth Amendment.  Id. at 748-49.

Having determined that an appellate court could salvage a death sentence by reweighing aggravating and mitigating circumstances, the Court turned its attention to whether the Mississippi Supreme Court actually had done so.  At this point, the Court recognized two methods by which the state court could have reweighed, but was not certain which course the state court had taken.  The state court might have been reweighing by (1) including in the balance the "especially heinous" factor as limited by prior decisions of the Mississippi Supreme Court or (2) eliminating the "especially heinous" factor altogether and reweighing the remaining valid aggravating circumstance against the mitigating evidence.  Id. at 751.  As for the latter, the Court observed that the Mississippi Supreme Court may not have reweighed at all, but simply applied a rule of "automatic affirmance" when at least one valid aggravating factor remains. Such a rule was not, in the Court's view, a proper method of reweighing, as it would not involve an actual reconsideration of the mix of aggravating and mitigating circumstances necessary to satisfy the Eighth Amendment's requirement of individualized sentencing.  Id. at 752.  With respect to the former, the Court did not elaborate, but it seems to have been referring to its

---

[4]  Making Enmund findings is a prime example of appellate courts' involvement in the review of capital sentences.

approval of appellate courts' application of a proper limiting construction to an aggravating circumstance that has been vaguely defined by statute. See Proffitt v. Florida, 428 U.S. 242, 255-56 (1976) (opinion of Stewart, Powell & Stevens, JJ.) (approving Florida death penalty statute in part because state supreme court adopted limiting construction of "especially heinous" factor).

The Court in Clemons also approved of an alternative route to affirmance -- harmless error analysis. Again, however, it was not clear whether the Mississippi Supreme Court had done so in its opinion affirming Clemons's death sentence. The Court indicated its approval of two methods of harmless error analysis: the state court could ask whether beyond a reasonable doubt the sentence would have been the same had the vague aggravating circumstance not been injected into the mix, or the court could ask whether beyond a reasonable doubt the sentence would have been the same had the circumstance been properly defined in the jury instructions. Clemons, 494 U.S. at 753-54; see also Sochor v. Florida, --- U.S. ---, 112 S. Ct. 2114, 2123 (1992). In remanding, the Court emphasized that state appellate courts are not required to reweigh or employ harmless error analysis, but that these are constitutionally permissible methods of salvaging a death sentence based upon an invalid or improperly defined aggravating circumstance. Clemons, 494 U.S. at 754.

Maynard and Clemons clearly dictate the conclusion that there was constitutional error in instructing the jury in the bare words of the statute. Thus, our first task is to determine

whether the Mississippi Supreme Court articulated any constitutionally permissible basis for upholding the death sentence.[5]  We agree with Wiley that the Mississippi Supreme Court neither eliminated the "especially heinous" factor from the mix and reweighed the remaining aggravating circumstances against the mitigating evidence, nor engaged in any of the forms of harmless error analysis sanctioned in Clemons.  Rather, the court, after reciting the limiting construction it had previously adopted for the "especially heinous" factor, merely held that the evidence supported the factor as narrowed.  Wiley II, 484 So. 2d at 353-54.  That it did not reweigh or perform harmless error analysis is not surprising.  Its decision was rendered in 1986, two years before Maynard, and at that time the Mississippi Supreme Court did not find any constitutional infirmity in submitting the "especially heinous" factor to the jury without a limiting instruction.  Thus, the court had no need to eliminate an improperly defined factor and reweigh or perform harmless error analysis.  Compare Clemons v. State, 535 So. 2d 1354 (Miss. 1988) (post-Maynard decision in which court recognized difficulty with "especially heinous" factor), vacated and remanded, 494 U.S. 738 (1990).  Wiley thus argues that, as in Clemons, the case must go back to the Mississippi Supreme Court.

---

[5]  To the extent the district court held that the death sentence could automatically be affirmed so long as valid aggravating factors remained, this conclusion was erroneous in light of Clemons.

10

We cannot agree with the State's contention that the Mississippi Supreme Court cured the sentencing error when it applied its narrowing construction to the "especially heinous" circumstance and found that the evidence supported the finding of the circumstance as narrowed.  Without a doubt, the Supreme Court has consistently held that the use of a vague aggravating circumstance poses no Eighth Amendment problem so long as the state appellate courts apply a proper narrowing construction. See Gregg v. Georgia, 428 U.S. 153, 201 (1976) (joint opinion) (Georgia's "outrageously vile" circumstance not vague so long as state supreme court applies limiting construction); Proffitt, 428 U.S. at 255 (Florida's "especially heinous" circumstance upheld because state supreme court had already adopted limiting construction); Walton v. Arizona, --- U.S. ---, 110 S. Ct. 3047, 3058 (1990) (death sentence upheld where state supreme court applied proper narrowing construction to "especially heinous, cruel or depraved" factor); Lewis v. Jeffers, --- U.S. ---, 110 S. Ct. 3092, 3100 (1990) (same).  Cf. Godfrey, 446 U.S. at 432-33 (striking down death sentence where "outrageously vile" circumstance was used because Georgia Supreme Court failed to apply limiting construction); Maynard, 486 U.S. at 363-64 (Oklahoma Court of Criminal Appeals' failure to apply a limiting construction to Oklahoma's "especially heinous" factor rendered death sentence infirm).  But after Clemons and Stringer, it is clear that an appellate court must do more than simply find that the aggravating circumstance as limited is supported by the

11

evidence.  Rather, once it makes this finding, the appellate

court must either perform the weighing function by incorporating

in the mix the aggravating circumstance as limited, or it must

perform harmless error analysis by asking whether, beyond a

reasonable doubt, the death sentence would have been imposed had

the aggravating circumstance been properly defined in the jury

instructions.[6]  Here, all the Mississippi Supreme Court did was

set forth its limiting construction of the "especially heinous"

factor and then conclude that there was enough evidence in the

record to support the factor as limited.  It did not perform

anything resembling the kind of reweighing or harmless error

analysis described above.

Clemons and Stringer together dictate this result.  Clemons

indicates that it would have viewed the state supreme court as

having reweighed if that court had "reweigh[ed] the mitigating

circumstances and both aggravating factors by applying the proper

definition to the 'especially heinous' factor."  Clemons, 494

U.S. at 751.  Later, in describing its conception of reweighing,

the Court pointed out that Lockett v. Ohio, 438 U.S. 586 (1978),

and Eddings v. Oklahoma, 455 U.S. 104 (1982), require the

sentencer to consider all mitigating evidence in imposing a death

---

[6]  Of course, the appellate court may reweigh by eliminating
the aggravating factor altogether, and it also may perform
harmless error analysis by asking whether, beyond a reasonable
doubt, the death sentence would have been imposed had the vague
aggravating factor never been submitted to the jury.  The options
discussed in the text describe the courses an appellate court may
follow if it decides to incorporate the aggravating factor as
limited.

12

sentence; a failure to reevaluate "the mix of mitigating factors and aggravating circumstances," Clemons, 494 U.S. at 752, means that the appellate court's review does not qualify as reweighing. Moreover, in speaking of harmless error analysis, the Court in Clemons is clear that an appellate court does not simply apply the limiting construction, but must inquire into "whether beyond a reasonable doubt the result would have been the same had the especially heinous aggravating circumstance been properly defined in the jury instructions." Id. at 754 (emphasis added). This imposes a burden which obviously is more exacting than the burden of finding that the evidence supports the narrowed aggravating factor.

Stringer makes these points even more clearly by emphasizing the infirmity of a vague aggravating circumstance in a weighing state. Stringer initially points out the critical importance in a weighing state of "defin[ing] [aggravating circumstances] with some degree of precision." Stringer, 112 S. Ct. at 1136. This is due to the fact that aggravating factors in a weighing state do not simply narrow the class of persons eligible for the death penalty, as in Georgia, but rather lie at the very heart of the sentencer's ultimate decision to impose a death sentence. Consequently,

> [a]lthough we ... held in Clemons v. Mississippi that [when the sentencing process is infected with an invalid aggravating factor] a state appellate court could reweigh the aggravating and mitigating circumstances or undertake harmless-error analysis, we have not suggested that the Eighth Amendment permits the state appellate court in a weighing State to affirm a death sentence without a thorough

13

> analysis of the role an invalid aggravating factor played in the sentencing process.

Id. The Court emphasized this point one paragraph later:

> In order for a state appellate court to affirm a death sentence after the sentencer was instructed to consider an invalid factor, the court must determine what the sentencer would have done absent the factor. Otherwise, the defendant is deprived of the precision that individualized consideration demands under the Godfrey and Maynard line of cases.

Id. at 1136-37. The key to the requirement of such close appellate scrutiny lies in the nature of weighing. In a system such as Georgia's, the jury uses aggravating circumstances to determine whether the defendant is eligible for death; if it finds at least one, it then considers all the evidence adduced at the guilt-innocence and sentencing phases in determining whether death is the appropriate penalty. Id. at 1136; Zant v. Stephens, 462 U.S. 862, 872 (1983). Thus, the jury's use of an invalid aggravating circumstance in determining death-eligibility does not infect the ultimate decision to impose a death sentence and the sentence may be upheld so long as the appellate court determines that the invalid factor made no difference. See Stringer, 112 S. Ct. at 1137. In a weighing state, in contrast, the process of determining that death is the appropriate penalty -- that is, the weighing process -- is skewed when the sentencing body is told that it may include an invalid factor in its decision. "A vague aggravating factor used in the weighing process is in a sense worse [than in the Georgia system], for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by

14

relying upon the existence of an illusory circumstance."  Id. at 1139.  Thus, a court reviewing a death sentence in which the weighing process has been skewed may not simply apply a limiting construction to the factor that has skewed the weighing, but must also reconsider the entire mix of aggravating and mitigating circumstances presented to the jury.[7]

In addition, we cannot agree with the State that the Mississippi Supreme Court actually performed a harmless error analysis.  The words "harmless error" are not used in connection with the invalid aggravating factor, and there is no indication that the court gave the kind of "close appellate scrutiny of the

---

[7]  Our conclusion that a state appellate court may not simply apply a limiting construction to a vague aggravating circumstance is not inconsistent with Walton v. Arizona, --- U.S. ---, 110 S. Ct. 3047 (1990), or Lewis v. Jeffers, --- U.S. ---, 110 S. Ct. 3092 (1990).  Both cases involved the Arizona capital sentencing scheme, which, as described by the Supreme Court, appears to be a weighing system.  And, in both cases, the Court upheld death sentences in which the sentencer (a trial judge) used Arizona's "especially heinous, cruel or depraved" aggravating circumstance.  Even if the trial judge did not apply the limiting construction (as he is presumed to do, Walton, 110 S. Ct. at 3057; Sochor v. Florida, --- U.S. ---, 112 S. Ct. 2114, 2121 (1992)), the sentences were not constitutionally infirm because the Arizona Supreme Court applied an acceptable narrowing construction on direct review.  However, the Arizona Supreme Court in both cases did not simply find that the evidence supported the aggravating circumstances as limited; rather, it also reconsidered the mitigating evidence and concluded that there was insufficient mitigating evidence to call for leniency. Walton, 110 S. Ct. at 3053; Jeffers, 110 S. Ct. at 3097.  Thus, the Arizona Supreme Court's review constitutes the kind of reweighing required by Clemons and Stringer.  In the case before us, by contrast, the Mississippi Supreme Court never reconsidered the mitigating evidence against the "especially heinous" circumstance as narrowly construed.  This runs afoul of the need to "give defendants the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances."  Clemons, 494 U.S. at 752 (citation omitted).

15

import and effect of invalid aggravating factors," Stringer, 112 S. Ct. at 1136, that must accompany the modes of harmless error analysis described in Clemons.  See Sochor, 112 S. Ct. at 2123 (a plain statement that a death sentence which incorporates an invalid aggravating factor survives harmless error enquiry is preferable to simply citing cases); id. (O'Connor, J., concurring) (Clemons requires more than a bald statement that error was harmless).[8]

Because only the Mississippi courts can determine the proper approach to Wiley's sentencing, we must vacate the judgment of the district court insofar as it holds that the basing of Wiley's sentence on the "especially heinous" aggravating circumstance did not offend the Eighth Amendment.  The district court is, therefore, directed to issue the writ of habeas corpus unless the State of Mississippi initiates appropriate proceedings in state court within a reasonable time after the issuance of our mandate. Because a new sentencing hearing before a jury is not constitutionally required, the State of Mississippi may initiate whatever state court proceedings it finds appropriate, including seeking a life sentence.  Cf. Bullock v. Cabana, 784 F.2d 187, 187 (5th Cir. 1986) (on remand from Supreme Court) (leaving State

_____

[8]  In a final attempt to avoid further proceedings in state court, the State asserts that this court can perform harmless error analysis itself.  Clemons and Stringer are quite clear, however, that any such analysis must be performed by the state courts.  See Clemons, 494 U.S. at 752; Stringer, 112 S. Ct. at 1136; see also Barclay v. Florida, 463 U.S. 939 (1983) (state appellate courts could apply harmless error analysis when reviewing death sentence imposed by judge who relied in part on invalid aggravating factor).

16

with choice of obtaining a determination from its own courts of factual question which could be decided by either jury or appellate court); Reddix v. Thigpen, 805 F.2d 506, 517 (5th Cir. 1986) (same).[9]

Wiley argues that placing this case back in the Mississippi courts will necessarily result in a new sentencing hearing, thus mooting the other claims he raises in this appeal. He contends that the Mississippi Supreme Court's decision in the Clemons remand, Clemons v. State, 593 So. 2d 1004 (Miss. 1992), establishes that that court will not perform either the reweighing or harmless error analysis sanctioned by the U.S. Supreme Court, but instead will automatically remand to the state trial court for resentencing. Our analysis of the opinion in the Clemons remand, however, indicates that a new sentencing hearing is not absolutely required under state law. Therefore, because Wiley may again receive a death sentence based on the 1984 sentencing trial, we will, in the interest of judicial economy, consider Wiley's claims arising out of that proceeding.

_____

[9] We note that, although the district court in this habeas proceeding cannot remand directly to the Mississippi Supreme Court as did the U.S. Supreme Court in the direct appeal in Clemons, Mississippi procedures permit the State to place a case directly before the Mississippi Supreme Court when a federal district court has granted a writ of habeas corpus and left to the State the task of initiating appropriate proceedings. In Reddix and Bullock, two habeas cases in which the federal court vacated the petitioners' death sentences in order to enable the state courts to make factual findings necessary for imposition of the death penalty, but in which the relevant findings could be made at either the trial or appellate level, the State made a motion to reinstate the death sentence directly in the Supreme Court of Mississippi. Reddix v. State, 547 So. 2d 792, 794 (Miss. 1989); Bullock v. State, 525 So. 2d 764, 765 (Miss. 1987).

17

Wiley is correct only about the Mississippi Supreme Court's view on the propriety under state law of reweighing. In its recent decision in Clemons v. State, the Mississippi Supreme Court held that state law precludes it from reweighing aggravating and mitigating factors to determine whether the death penalty is warranted. Analyzing Miss. Code Ann. § 99-19-101, which provides that the jury imposes the death penalty, and Miss. Code Ann. § 99-19-105, which sets forth criteria for review of death sentences by the Mississippi Supreme Court, the court held:

> From these statutory provisions, two things are clear: only the jury, by unanimous decision, can impose the death penalty; as to aggravating circumstances, this Court only has the authority to determine whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance. There is no authority for this Court to reweigh remaining aggravating circumstances when it finds one or more to be invalid or improperly defined, nor is there authority for this Court to find evidence to support a proper definition of an aggravating circumstance in order to uphold a death sentence by reweighing. Finding aggravating and mitigating circumstances, weighing them, and ultimately imposing a death sentence are, by statute, left to a properly instructed jury.

593 So. 2d at 1006; see also Shell v. State, 595 So. 2d 1323 (Miss. 1992) (vacated and remanded in light of Clemons; court held state law precluded reweighing); Jones v. State, No. 03-DP-601, 1992 WL 124774 (Miss. June 10, 1992) (same); Pinkney v. State, No. 03-DP-761, 1992 WL 146776 (Miss. July 1, 1992) (same).

The court in the Clemons remand and the above cited cases did not, however, find that state law precluded it from performing harmless error analysis. In Clemons, the court essentially concurred in the view of the U.S. Supreme Court that use of the invalid aggravating factor was not likely to be

18

harmless beyond a reasonable doubt in Clemons' sentencing, where only two aggravating circumstances were argued to the jury and the State's argument at sentencing was devoted almost entirely to the "especially heinous" circumstance. Moreover, the Mississippi Supreme Court found that the error was not harmless beyond a reasonable doubt because it was not convinced that the jury would have found the "especially heinous" factor had it been properly defined in the jury instructions. Id. at 1007.[10] Nothing in the opinion, however, suggests that a harmless error analysis is not permitted under state law. The Mississippi Supreme Court actually asked whether the error was harmless beyond a reasonable doubt, but found that it was not. Thus, although it remanded to the state trial court for resentencing in Clemons and three subsequent cases, there is no guarantee that it would do so in this case. Accordingly, returning this case to the Mississippi courts will not necessarily moot Wiley's other federal claims. We proceed now to consider those claims.

B. Robbery and Pecuniary Gain Aggravating Circumstances

Wiley levels a second challenge to the use of aggravating circumstances. He contends that, in considering the "robbery" and "pecuniary gain" circumstances, the jury "was encouraged to double the aggravating weight of evidence already fully considered in the context of another statutory aggravating circumstance." He contends that the use of two aggravating

---

[10] The Mississippi Supreme Court reached similar conclusions in the Shell, Jones and Pinkney remands.

circumstances that described the same conduct[11] failed to channel and limit the jury's discretion to impose the death sentence, and therefore resulted in an arbitrary death sentence in violation of the Eighth Amendment.

A number of state courts have expressed disapproval of the use of both the "robbery" and "pecuniary gain" aggravating factors when both would apply to the same conduct, including (as of 1991) Mississippi.[12]  These courts have not found this result dictated by the Eighth Amendment, but instead have relied on state law.  If Wiley were relying purely on state law in raising this claim, we would agree with the State that our consideration of the claim is barred.  See Pulley v. Harris, 465 U.S. 37, 41 (1984).  But Wiley has raised federal constitutional objections, so our powers as a federal habeas court are properly invoked. Having said that, there is an independent bar to our consideration of this claim:  Wiley asks us to create a "new rule" within the meaning of Teague v. Lane, 489 U.S. 288 (1989),

---

[11]  Murder for pecuniary gain could refer to conduct different than murder committed in the course of a robbery, as the former may encompass murder-for-hire.  In this case, there were no instructions differentiating among the two, and under the facts of the case both could only refer to the same conduct.

[12]  Cook v. State, 369 So. 2d 1251, 1256 (Ala. 1978); People v. Bigelow, 37 Cal. 3d 731, 209 Cal. Rptr. 328, 691 P.2d 994, 1006 (1984); Provence v. State, 337 So. 2d 783, 786 (Fla. 1976), cert. denied, 431 U.S. 969 (1977); Willie v. State, 585 So. 2d 660, 680-81 (Miss. 1991); State v. Rust, 197 Neb. 528, 250 N.W.2d 867, 873-74 cert. denied, 434 U.S. 912 (1977); State v. Glidewell, 663 P.2d 738, 743 (Okla. Crim. App. 1983).

and apply it retroactively to him, and he does not come within either of the exceptions to the <u>Teague</u> doctrine.[13]

Under <u>Teague</u>, new rules of constitutional criminal procedure will not be announced on federal habeas review unless one of two narrow exceptions applies.  489 U.S. at 311-13; <u>Saffle v. Parks</u>, 494 U.S. 484, 488 (1990); <u>Penry v. Lynaugh</u>, 492 U.S. 302, 313 (1989).  In the now-familiar parlance, "'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.'  Or, '[t]o put it differently, a case announces a new rule if the result was not <u>dictated</u> by precedent existing at the time the defendant's conviction became final.'"  <u>Penry</u>, 492 U.S. at 314 (citing <u>Teague</u>, 489 U.S. at 301) (brackets in <u>Penry</u>; emphasis in <u>Teague</u>); <u>see</u> <u>also</u> <u>Butler v. McKellar</u>, 494 U.S. 407, 412 (1990); <u>Stringer</u>, 112 S. Ct. at 1135.  These principles primarily serve federalism concerns: they validate state courts' reasonable, good faith reliance on precedents existing at the time they rendered their decisions, <u>Butler</u>, 494 U.S. at 414, and reduce the tendency of federal habeas review to undermine the finality of state criminal convictions.  See <u>Teague</u>, 489 U.S. at 308-09.

Although Wiley spends very little time arguing this claim in his brief[14] and cites no cases in support of the rule he seeks,

---

[13]  The retroactivity issue was not raised by the State, but, as did the Court in <u>Teague</u>, 489 U.S. at 300, we may consider it <u>sua</u> <u>sponte</u>.  <u>Smith v. Black</u>, 904 F.2d 950, 981 n.12 (5th Cir. 1990), <u>vacated</u> <u>and</u> <u>remanded</u> <u>on</u> <u>other</u> <u>grounds</u>, --- U.S. ---, 112 S. Ct. 1463 (1992).

[14]  It was not raised at oral argument.

21

we perceive his claim to be based on the well-established principle that, when the proposed penalty is death, the sentencer's discretion must be channelled and limited so to as to avoid imposition of the penalty in a "wanton or freakish" manner. Gregg, 428 U.S. at 188-89 (quoting Furman v. Georgia, 408 U.S. 238, 310 (1972) (Stewart, J., concurring)); see also Stephens, 462 U.S. at 874; Walton, 110 S. Ct. at 3061 (Scalia, J., concurring in part and concurring in the judgment) (listing the many ways the Court has described this basic principle). Saying that his claim is "based on" this principle, however, is not the same as saying his claim is dictated by precedent. A death-sentenced petitioner could raise any number of objections to the use of aggravating circumstances and contend that all flow from the basic Eighth Amendment narrowing requirement. Were a habeas petitioner able to spark creation of a new rule simply by invoking Gregg and its progeny, the practical limits the Court has placed on retroactive application of new rules would be all but eviscerated in the Eighth Amendment capital sentencing context.

In order for Wiley's sought-after rule not to be considered new, we think it must be dictated by precedent more specific than Gregg and the cases repeating its essential principle. In the only Supreme Court case holding that a rule which ultimately derived from the Gregg principle was not a new rule, the Court did not base its decision on Gregg or the generalized requirement that state capital sentencing statutes narrow the class of

22

persons eligible for the death penalty, but instead on a more particularized application of the Gregg principle.  The case to which we refer, of course, is Stringer, and it found the invalidation in Maynard v. Cartwright and Clemons v. Mississippi of the "especially heinous" aggravating circumstance dictated by Godfrey v. Georgia.  Godfrey was a specific application of the narrowing requirement in which the Court held that the Georgia system's threshold criterion for imposing a death sentence must be defined with precision either in the jury instructions or by the state appellate court reviewing the sentence.  Thus, Stringer does not suggest to us that the relevant precedent is the broad-based Gregg principle, but rather some precedent that would speak to the constitutionality of giving the jury in a weighing state multiple, identical aggravating circumstances.  Cf. Penry, 492 U.S. at 315-19 (requested rule that Texas juries be given special instruction on ability to consider mitigating evidence is not new, because the Texas capital sentencing scheme had been upheld in 1976 on the specific understanding that the statute would not preclude presentation of mitigating evidence); Saffle, 494 U.S. at 491-92 (Penry was an application of the specific precedent of Jurek).

We can find no precedent that will assist Wiley.  The Court's only specific extension of the Gregg principle has come in the Godfrey-Maynard-Clemons line of decisions, a group of cases which speak to the importance of precision in defining aggravating circumstances in both weighing and non-weighing

23

states and to the consequences for appellate review of imprecisely defined circumstances. <u>Godfrey</u>, <u>Maynard</u> and <u>Clemons</u> (all of which are available to Wiley) provide no basis for the sought-after rule here, for Wiley is not claiming that the robbery and pecuniary gain aggravating circumstances were invalid, improperly defined, or imprecise. Rather, he simply raises a broad-based claim that "stacking" of identical, valid aggravating circumstances will impermissibly influence the jury in a weighing state toward returning a death sentence. Were we to grant Wiley the relief he seeks we would necessarily "break new ground," so the rule must be classified as new. <u>Cf.</u> <u>Saffle</u>, 494 U.S. at 490 (rule which would preclude sentencing jury from being told to avoid any influence of sympathy relates to <u>how</u> sentencer must consider mitigating evidence, not <u>what</u> evidence it may consider, and so is not dictated by the <u>Lockett</u>-<u>Eddings</u> principle).

Neither of the two exceptions to the new rule doctrine helps Wiley. The first exception applies when a new rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'[.]" <u>Teague</u>, 489 U.S. at 311 (quoting <u>Mackey v. United States</u>, 401 U.S. 667, 692 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). It requires no extended discussion to show why the rule Wiley seeks would not put any individual conduct beyond the authority of government to proscribe. The second exception applies to procedural rules which are critical

24

to an accurate determination of guilt or innocence.  Id. at 312.
This exception, too, is obviously inapplicable.  Accordingly,
because Wiley asks us to apply a new rule to him on habeas, we
cannot reach the merits of the claim.


### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Wiley argued in the district court that he received
ineffective assistance of counsel at both the guilt and
sentencing phases, but on appeal he confines his claim to the
sentencing phase.  He asserts that an evidentiary hearing is
necessary to resolve disputed facts concerning his
representation.  A federal habeas court must hold an evidentiary
hearing if there are disputed facts and the petitioner did not
receive a full and fair hearing in a state court, either at trial
or in a collateral proceeding.  Townsend v. Sain, 372 U.S. 293,
312 (1963), overruled in part on other grounds, Keeney v. Tamayo-
Reyes, --- U.S. ---, 112 S. Ct. 1715 (1992).  This standard
applies equally to ineffective assistance of counsel claims.  If
the record is adequate to dispose of the claim, the federal court
need not hold an evidentiary hearing.  Byrne v. Butler, 845 F.2d
501, 512 (5th Cir.), cert. denied, 487 U.S. 1242 (1988); see also
Paster v. Lynaugh, 876 F.2d 1184, 1190 (5th Cir. 1989), cert.
denied, --- U.S. ---, 110 S. Ct. 272 (1990); Baldwin v. Maggio,
704 F.2d 1325, 1329 (5th Cir. 1983), cert. denied, 467 U.S. 1220
(1984).

We review claims of ineffective assistance of counsel at capital sentencing trials under the two-part test of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). First, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. <u>Id.</u> at 688. We are "highly deferential" to counsel's decisions about how to conduct the defense, as it is extremely difficult for reviewing courts to place themselves in counsel's position and evaluate the choices he or she should have made. The range of attorney conduct that must be considered reasonable is thus quite wide, and our inquiry must focus on the particular decisions an attorney made in light of all the circumstances. <u>Id.</u> at 689-90. This standard applies no less to an attorney's duty to investigate than to the other duties associated with trial: "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Id.</u> at 690-91. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. A court evaluating a claim of ineffective assistance

26

need not address the reasonableness component first, and, if a defendant fails on one part, the court need not address the other.  <u>Id.</u> at 697.

The essence of Wiley's claim is that his appointed counsel at the guilt-innocence trial and both sentencing trials, James D. Franks, conducted a woefully inadequate investigation of mitigating evidence.  At the second sentencing trial, Franks called no witnesses in Wiley's behalf, choosing instead to present mitigating evidence entirely through the cross-examination testimony of the State's witnesses.  Franks elicited testimony from Terry Galt, a co-worker of Wiley at the time of the crime, that Wiley was not a troublemaker and did not display violent tendencies.  Turner's wife and daughter, both of whom knew Wiley from Wiley's visits to the convenience store, also testified that they had not seen Wiley act violently.  In cross-examining Mike Allen, a State forensic scientist and the State's firearms expert, Franks attempted to cast doubt on the State's theory that Wiley was moving toward Turner when he fired the shotgun, thereby indicating a lack of intent to kill.  James Riley, chief deputy sheriff of DeSoto County, testified that Wiley accepted blame for the crime, was a model prisoner, and cooperated in the law enforcement investigation.  According to an affidavit Franks filed in connection with Wiley's habeas petition, Franks questioned Wiley about witnesses that might appear on his behalf, but Wiley "did not give me any names."

27

Wiley asserts that Franks unreasonably failed to investigate his background, character and mental condition, and that he failed to locate witnesses who could have bolstered the evidence that Wiley had no history of violence or criminal behavior. He contends that Franks could have obtained a considerable amount of evidence that would have related directly to the mitigating circumstances enumerated in the Mississippi capital sentencing statute, such as mental impairment and diminished capacity. See Miss. Code Ann. § 99-19-101(6)(b),(f) (Supp. 1991). In his petition, he proffered affidavits in which friends and family in the DeSoto County area stated that they would have testified on Wiley's behalf had they been contacted; Army and school records; and the affidavits of a psychologist (Dr. Billy Fox) and a psychiatrist (Dr. Robert Ritter) who examined Wiley in 1987. Dr. Fox stated that he diagnosed Wiley as suffering from borderline mental retardation, alcoholism and drug dependency, and passive/aggressive personality disorder. Dr. Ritter's diagnosis was similar. Both stated that, had they been called to testify at the sentencing trial, they would have been able to present a psychological profile of Wiley which would help explain his crime and make him appear more sympathetic to the jury.

On the basis of this record, Wiley is not entitled to a federal evidentiary hearing. His own affidavit and Franks's affidavit are not in conflict on the basic fact that Wiley did not bring to Franks's attention any of the potentially mitigating evidence now in the habeas record. Wiley's affidavit states:

28

"Mr. Franks did not fully explain to me that it was important for people who knew me to testify at the sentencing hearing. Mr. Franks only asked me a general question about whether there was anyone who would help in my defense." Franks's affidavit states: "I questioned Mr. Wiley about witnesses that might appear on his behalf but he did not give me any names." At only one point does Wiley acknowledge providing Franks with information that might be mitigating: "I told Mr. Franks about my abuse of alcohol, speed and pot before the alleged crime." There is absolutely no suggestion in any of Wiley's submissions, however, that there was any reason for Franks to suspect the existence of mental impairment. There is no indication that Wiley had ever been examined by mental health professionals prior to the sentencing trial, that he had been diagnosed as suffering from any particular disorder, or that his personality was such that a reasonable person would have thought mental impairment a promising line of defense.

Investigations into mitigating circumstances may reasonably be limited where the defendant fails to call witnesses to his lawyer's attention. See Burger v. Kemp, 483 U.S. 776, 794-95 (1987) (counsel's interview of only those witnesses called to his attention was reasonable). Our cases, too, have recognized that a defendant who does not provide any indication to his attorneys of the availability of mitigating evidence may not later assert an ineffective assistance claim. For example, in Byrne, the habeas petitioner complained of his attorneys' failure to

29

discover evidence of an underlying mental disorder.  Assuming for the sake of argument that Byrne in fact suffered from a mental disorder which could have mitigated the death sentence, we held that "Byrne must still demonstrate . . . that his attorneys had some indication that mental impairment might prove a promising line of defense."  845 F.2d at 513 (citations omitted).  But Byrne, like Wiley, "[did] not allege that he intimated to his attorneys that he was suffering from a mental disorder."  Id. Similarly, in James v. Butler, 827 F.2d 1006 (5th Cir. 1987), cert. denied, 486 U.S. 1046 (1988), we rejected an ineffectiveness claim where the petitioner did not alert counsel to the possibility of a defense based on mental impairment due to drugs.

This is not a case like Loyd v. Smith, 899 F.2d 1416 (5th Cir. 1990), where, despite the fact that the petitioner had been subject to a sanity examination prior to trial, his lawyers failed to investigate his mental impairments any further prior to the sentencing hearing and failed to obtain an independent psychiatric examination to fill in acknowledged "gaps in the record."  Id. at 1421.  Also distinguishable is Wilson v. Butler, 813 F.2d 664 (5th Cir. 1987), cert. denied, 484 U.S. 1079 (1988). There, we held that an evidentiary hearing on an ineffectiveness claim was necessary where the petitioner alleged that his father had alerted defense counsel to the petitioner's "problems" dating from childhood.  Id. at 669, 671.  We found that this information was sufficient to require competent counsel to further

30

investigate the petitioner's background.  Id. at 671; see also

Profitt v. Waldron, 831 F.2d 1245 (5th Cir. 1987) (counsel

ineffective where he knew defendant had escaped from a mental

institution, but did not determine why defendant had been in the

institution).

Franks's decision to limit his investigation of potential

mitigating evidence to State's witnesses is reasonable to the

extent it was supported by a reasonable professional judgment

about how to conduct the defense.  Strickland, 466 U.S. at 690-

91.  Because nothing alerted Franks to the possibility of mental

impairment as a mitigating factor, we find the decision not to

obtain a psychiatric evaluation entirely reasonable.  Wiley

asserts that he told Franks that he had been under the influence

of drugs and alcohol, but this meager information alone would not

require the full-scale investigation Wiley suggests was

necessary.  Although we are of the view that counsel could have

made an effort to locate friends and family who could have

testified about Wiley's favorable qualities, "'[w]e address not

what is prudent or appropriate, but only what is constitutionally

compelled.'"  Burger, 483 U.S. at 794 (citing United States v.

Cronic, 466 U.S. 648, 665 n.8 (1984)).  Wiley and Franks agree

that Wiley did not provide Franks with any leads on witnesses.

Franks could reasonably have concluded that the most promising

line of defense at the sentencing trial was to force the State's

witnesses to tell the jury about Wiley's history of nonviolence,

cooperation in the investigation, good behavior as a prisoner,

31

and acceptance of blame for the crime.  He could also reasonably have concluded, as the state court noted, that introducing evidence of any adverse psychological background would have contradicted his attempt to portray Wiley as basically a nonviolent person who had no intent to kill Turner.  See Wiley III, 517 So. 2d at 1380.  In sum, we do not find that Franks's decisions at Wiley's second sentencing trial were unreasonable, and so we do not address the prejudice component of the inquiry.

## IV. BATSON CLAIM AND IMPROPER PROSECUTORIAL COMMENTS

Wiley asserted in his petition that the prosecutor improperly exercised his peremptory challenges to exclude all but one black from the jury venire, in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  He also asserted that the prosecutor violated his due process rights by introducing a materially inaccurate transcript of Wiley's confession and twice reading the erroneous language in rebuttal closing argument, and by making improper remarks in the closing argument about the brutality of the murder.  Wiley did not object at trial to the peremptory challenges or to the prosecutor's closing argument. He did object to the transcript, but did not raise any issue with respect to the transcript on direct appeal.  On collateral review, the Mississippi Supreme Court stated that Wiley's failure to raise the three issues listed above at trial or on direct appeal rendered the claims "procedurally barred and not subject to further review by this Court, under Miss. Code Ann. § 99-29-

32

21. Wilcher v. State, 479 So. 2d 710 (Miss. 1985)." Wiley III, 517 So. 2d at 1378.

The district court found that the Mississippi Supreme Court, the last state court to address Wiley's claims, had clearly and expressly relied on a procedural bar erected by state law in rejecting these claims. See Harris v. Reed, 489 U.S. 255, 263 (1989). Accordingly, the district court held, Wiley could not obtain federal review of these claims unless he showed "cause" for defaulting them in state court and resulting prejudice. See id. at 262-63; Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Wiley attempted to circumvent the procedural bar with respect to the Batson and closing argument claims on the ground that his counsel's ineffectiveness was cause for failing to object, and, alternatively, attempted to avoid the procedural bar altogether by arguing that the Mississippi courts did not consistently apply the bar.[15] The district court rejected both arguments. On appeal, Wiley concedes the state court's reliance on a procedural bar but reurges his two arguments for disregarding it.

A. Batson Claim

Because Wiley's conviction had not yet become final at the time Batson was decided, he is not precluded from taking advantage of the decision. See Griffith v. Kentucky, 479 U.S.

---

[15] Wiley did not argue that he had cause for failing to raise the transcript claim on direct appeal. The only ground he asserted for avoiding the procedural bar with respect to that claim was Mississippi's inconsistent application of the bar.

33

314 (1987) (Batson applies retroactively to cases pending on direct review in state courts). However, it is settled in this circuit that a timely objection to the prosecutor's peremptory challenges is essential to a Batson claim. Thomas v. Moore, 866 F.2d 803, 805 (5th Cir.), cert. denied, 493 U.S. 840 (1989); Jones v. Butler, 864 F.2d 348, 369 (5th Cir.) (on petition for rehearing), cert. denied, 490 U.S. 1075 (1989); see also Wilkerson v. Collins, 950 F.2d 1054, 1063 (5th Cir. 1992), petition for cert. filed, No. 91-7669 (U.S. March 18, 1992). This is so because of the difficulty inherent in a post hoc attempt to determine the reasons behind a prosecutor's challenges. Id. at 369-70. Under the reasoning of Thomas and Jones, cause for failing to object and resulting prejudice cannot rescue the claim. However, because the Mississippi Supreme Court relied on a state procedural bar we think it appropriate (although not required) to address Wiley's cause and prejudice arguments in the alternative.

B. Ineffective Assistance of Counsel as Cause on the Batson and Closing Argument Claims

The Supreme Court fleshed out the concept of "cause" for a procedural default in Carrier, holding that cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." 477 U.S. at 488. Without excluding other possible ways a petitioner could make this showing, the Court noted that a lack of reasonable availability of the factual or legal basis for a claim or the

34

existence of interference by state officials would satisfy the standard.  Id.  Because the Sixth Amendment prevents states from conducting trials at which defendants receive inadequate legal assistance, the Court held, "[i]neffective assistance of counsel . . . is cause for a procedural default."  Id.; see also Coleman v. Thompson, --- U.S. ---, 111 S. Ct. 2546, 2566 (1991) (ineffective assistance may be cause when default occurs in proceedings in which petitioner had constitutional right to counsel).[16]

With respect to the Batson claim, Batson had not yet been decided when Wiley's second sentencing trial took place.  Wiley suggests, however, that his counsel's failure to object was unreasonable because the basis for a challenge to the prosecutor's conduct was established in Swain v. Alabama, 380 U.S. 202 (1965).  The Court's description in Batson of the fatal flaw in the Swain decision undercuts this contention.  In order to make out a violation of the Equal Protection Clause under Swain, a defendant was required to show that prosecutors repeatedly exercised peremptory challenges to remove blacks who had been selected as qualified jurors and who survived challenges for cause.  See Batson, 476 U.S. at 92.  Since the lower courts'

---

[16] The standards of Strickland apply fully in this context. Carrier, 477 U.S. at 488.  In addition, in order to use ineffective assistance to establish cause, a petitioner must first exhaust it as an independent constitutional claim in state court.  Id. at 489.  Wiley has properly exhausted a claim of ineffective assistance of counsel for failing to raise a Batson claim and for failing to object to the prosecutor's closing argument.  See Wiley III, 517 So. 2d at 1380-81.

35

interpretation of Swain "ha[d] placed on defendants a crippling burden of proof, prosecutors' peremptory challenges [were] largely immune from constitutional scrutiny." Batson, 476 U.S. at 92-93 (footnote omitted); see Willis v. Zant, 720 F.2d 1212, 1220 (11th Cir. 1983) (winning Swain claims extremely difficult), cert. denied, 467 U.S. 1256 (1984). Wiley's counsel, like countless other defense attorneys laboring under the onerous proof burdens required by Swain, undoubtedly decided that he was unlikely to mount a successful constitutional challenge to the prosecutor's peremptory challenges. We must view this strategic decision as reasonable under the standards articulated in Strickland. See Poole v. United States, 832 F.2d 561, 565 (11th Cir. 1987) (attorney not ineffective for failing to raise Batson claim before decision because case was a clear break with precedent), cert. denied, 488 U.S. 817 (1988); cf. Government of Virgin Islands v. Forte, 865 F.2d 59, 62-63 (3d Cir. 1989) (counsel's failure to raise Batson claim was ineffective only because defendant asked him to object in light of fact that Batson was pending). Consequently, ineffective assistance of counsel does not function as cause for Wiley's failure to comply with the state's contemporaneous objection rule.

We can more easily dispose of the argument that ineffective assistance underlies the default of the closing argument claim. The prosecutor referred to the brutality of the murder, undoubtedly focusing the jury on the then-legal "especially heinous, atrocious or cruel" aggravating circumstance. This sort

36

of approach in a closing argument is not by any means an obvious constitutional violation, particularly in light of the evidence adduced at the sentencing trial.  See Mattheson v. King, 751 F.2d 1432, 1445-46 (5th Cir. 1985) (prosecutor's reference to victim's head as having been blown off and into the ceiling did not render trial unfair, in light of evidence at trial), cert. dism'd, 475 U.S. 1138 (1986).  Indeed, the prosecutor's closing argument was not nearly as graphic as that in Mattheson, consisting instead of an expression of horror at the nature of the crime and an exhortation to the jury to ensure that Wiley did not kill again. Franks could reasonably have decided not to risk antagonizing the jury by objecting, or he could have decided that his best strategy was to let his own closing argument (recited before the State's) speak for itself.  Whatever the reason he chose not to object, we do not view his conduct as ineffective assistance. Thus, Wiley has not established cause for failing to object to the closing argument.[17]

---

[17]  With respect to the Batson claim, Wiley also suggests that we disregard the bar of the contemporaneous objection rule altogether.  Not only does the bar "serve no legitimate state interest," Wiley says, requiring a contemporaneous objection where settled law bars a challenge to a prosecutor's use of peremptories would merely encourage needless delay.  We disagree for two reasons.  First, the Supreme Court has made it quite clear that in the habeas context, a state's application of a procedural rule to bar review is an adequate and independent ground supporting the state judgment.  See Coleman, 111 S. Ct. at 2554; Harris, 489 U.S. at 262; Sykes, 433 U.S. at 81, 87.  Given the concerns of "comity and federalism" which support the independent and adequate state ground doctrine in habeas, Coleman, 111 S. Ct. at 2554, we are not at liberty to disregard a particular state rule even if we disagree with its utility in a particular case.  Second, to the extent that Wiley is arguing that he had cause for the procedural default because the factual

C. <u>Inconsistency of Mississippi's Application of the Procedural Bar</u>

Wiley next relies on the principle that a state court's invocation of a procedural bar will not preclude federal review where the state courts do not regularly apply the rule cited as the bar. See <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988). The district court, relying on <u>Hill v. Black</u>, 887 F.2d 513 (5th Cir. 1989), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, --- U.S. ---, 111 S. Ct. 28 (1990), held that the Mississippi courts regularly apply the contemporaneous objection rule as a procedural bar, and thus held the state procedural bar effective.

In invoking a procedural bar to eliminate consideration of the <u>Batson</u>, closing argument and transcript claims, the Mississippi Supreme Court simply listed the claims and then cited the rule barring claims not objected to at trial or raised on direct appeal. It is important here, however, to distinguish between the separate grounds of contemporaneous objection and

---

or legal basis for a <u>Batson</u> claim was not reasonably available at the time of his sentencing hearing in June 1984, we cannot agree. If this were the case, of course, it would constitute cause for the procedural default. <u>Reed v. Ross</u>, 486 U.S. 1, 16 (1984); <u>Carrier</u>, 477 U.S. at 488. But <u>Swain</u>'s condemnation of race-based peremptory challenges certainly raised the possibility that one might prevail on the courts to find a constitutional violation under a less onerous burden of proof than required by <u>Swain</u> itself. "<u>Swain</u> should have warned prosecutors that using peremptories to exclude blacks on the assumption that no black juror could fairly judge a black defendant would violate the Equal Protection Clause." <u>Batson</u>, 476 U.S. at 101 (White, J., concurring). Defense attorneys, too, were alerted to the constitutional problem and could (but were not necessarily required to) lodge an objection. <u>Cf.</u> <u>McCray v. Abrams</u>, 750 F.2d 1113, 1124-30 (2d Cir. 1984), <u>reh'g en banc denied</u>, 756 F.2d 277 (1985), <u>vacated and remanded</u>, 478 U.S. 1001 (1986).

failure to raise a claim on direct appeal, for Wiley did raise an objection at trial to the prosecutor's use of the transcript. Thus, we perceive the Mississippi Supreme Court to have rejected the Batson and closing argument claims due to Wiley's failure to object at trial, and to have rejected the transcript claim for failing to raise it on direct appeal.  As we discuss below, this court has reached different conclusions about the consistency of these two different procedural bars.

In Hill, we found that "the Supreme Court [of Mississippi] regularly applies the contemporaneous objection rule to the cases before it."  887 F.2d at 516.  It is true, as Wiley points out, that the Mississippi Supreme Court may disregard the procedural bar rule when plain error exists.  But we acknowledged this practice in Hill and did not find that it detracted from the consistency of Mississippi's application of the rule.  Hill, 887 F.2d at 516.[18]  Johnson does not help Wiley overcome the contemporaneous objection bar, because the inconsistency identified in Johnson arose in only one limited context: the failure of a defendant to challenge on direct appeal a conviction that forms the basis for an enhanced sentence or supports an

_____

[18]  Although we went on to discuss the substantive merits of the claims the Mississippi Supreme Court had held procedurally barred in Hill, we did so in order to illustrate that the district court had erred in granting the writ on the ground that Mississippi applied the rule inconsistently.  We pointed out that "neither [claim] would have justified the Mississippi Supreme Court in applying the exception to the Mississippi contemporaneous objection rule to either allegation of error. Accordingly, the district court erred in granting habeas corpus relief based on the Mississippi Supreme Court's application of the Mississippi procedural bar rule."  Hill, 887 F.2d at 518.

aggravating circumstance in a capital sentencing.  <u>Johnson</u> does

not speak at all to the contemporaneous objection rule, so we are

bound by <u>Hill</u> to respect Mississippi's application of that rule.

The bar of failure to raise a claim on direct appeal is a

different matter.  In <u>Wheat v. Thigpen</u>, 793 F.2d 621 (5th Cir.

1986), <u>cert.</u> <u>denied</u>, 480 U.S. 930 (1987), we found that the

Mississippi Supreme Court announced this rule in 1983 and then

followed it that year in four additional cases.[19]  However, we

found that the court in 1985 considered a claim in a collateral

proceeding that had not been raised on direct appeal.  <u>Id.</u> at

626.[20]  We therefore concluded that "the Mississippi Supreme

Court had not clearly announced or strictly or regularly followed

the procedural bar at the time of Wheat's direct appeal," <u>id.</u> at

627, and so proceeded to consider the purportedly barred claim on

the merits.  <u>Wheat</u> was adhered to in <u>Reddix v. Thigpen</u>, 805 F.2d

506, 510 (5th Cir. 1986); <u>Edwards v. Scroggy</u>, 849 F.2d 204, 209

n.4 (5th Cir. 1988), <u>cert.</u> <u>denied</u>, 489 U.S. 1059 (1989); and

<u>Smith v. Black</u>, 904 F.2d 950, 971 (5th Cir. 1990), <u>vacated</u> <u>on</u>

<u>other</u> <u>grounds</u>, --- U.S. ---, 112 S. Ct. 1463 (1992), three cases

in which direct appeal and collateral review in the Mississippi

courts took place before 1985.

---

[19]  The rule was announced in <u>Wheat v. Thigpen</u>, 431 So. 2d
486 (Miss. 1983), and followed in <u>King v. Thigpen</u>, 441 So. 2d
1365 (Miss. 1983); <u>Evans v. State</u>, 441 So. 2d 520 (Miss. 1983);
<u>cert.</u> <u>denied</u>, 467 U.S. 1264 (1984); <u>Smith v. State</u>, 434 So. 2d
212 (Miss. 1983); and <u>Edwards v. Thigpen</u>, 433 So. 2d 906 (Miss.
1983).

[20]  The inconsistent case was <u>Caldwell v. State</u>, 481 So. 2d
850 (Miss. 1985).

40

Wiley's direct appeal of his sentence took place in 1986, and the decision on collateral review applying the procedural bar was handed down in late 1987.  This might suggest that the court reverted to the rule it stated it intended to enforce in 1983.  A contrary answer is suggested by the Mississippi Supreme Court's disregard of the direct appeal bar in at least one case decided subsequent to Wiley's collateral review: in Clemons v. State, 535 So. 2d 1354 (Miss. 1988), vacated on other grounds, 494 U.S. 738 (1990), the court considered a challenge to the "especially heinous" aggravating circumstance that was not raised on direct appeal, stating that it would do so because of the recent decision in Maynard v. Cartwright and because of its statutory obligation to review death sentences.  Clemons, 535 So. 2d at 1362.  However, it is arguable that the Mississippi Supreme Court's reluctance to impose the procedural bar in Clemons may be based on, and hence may be limited to, the court's statutory duty to review death sentences for the influence of passion, prejudice or other arbitrary factors, and for proportionality.  See Miss. Code Ann. § 99-19-105(3) (1972 & Supp. 1991).  We need not decide whether Mississippi regularly enforced its direct appeal bar at the time of Wiley's collateral review with respect to the class of claims presented here, for, as we discuss below, our review of the merits of the transcript claim convinces us that any error was harmless beyond a reasonable doubt.

41

D. Merits of the Transcript Claim

In his confession, Wiley told the police "I just shot up, but I definitely hit him."  Because the audio tape of the confession was difficult to hear, the State transcribed it.  The transcript omitted the word "up" from the passage quoted above.  Wiley contends that constitutional error occurred when the prosecutor introduced the incorrect transcript and twice read from it in rebuttal closing argument.  Wiley has not suggested how error of a magnitude sufficient to require reversal arose from this slight misstatement.  Perhaps inclusion of the word "up" would, if the jury attached a spatial meaning, detract from the conclusion that Wiley intended to kill.  In view of the other evidence in this case (including the balance of Wiley's confession), we have no trouble concluding that any error was harmless beyond a reasonable doubt.  See Chapman v. California, 386 U.S. 18 (1967).

V. EVIDENCE ABOUT THE VICTIM

Wiley argues that the admission of evidence about the character and worth of the victim, including his reputation in the community as a generous person and his relationship with his family, violated his right to a fair trial.  Wiley repeatedly objected at trial and raised the issue on direct appeal, but the Mississippi Supreme Court rejected his claim.  Wiley II, 484 So. 2d at 348.  The court refused to consider the claim because of

42

the res judicata principles applicable on collateral review.
Wiley III, 517 So. 2d at 1377.

Claims concerning evidence of this sort are now governed by
Payne v. Tennessee, --- U.S. ---, 111 S. Ct. 2597 (1991).[21]  The
Court in Payne observed that "[i]n the majority of cases, . . .
victim impact evidence serves entirely legitimate purposes."
Thus, "[a] State may legitimately conclude that evidence about
the victim and about the impact of the murder on the victim's
family is relevant to the jury's decision as to whether the death
penalty should be imposed."  Id. at 2608-09.  Victim impact
evidence is constitutionally acceptable so long as it is not "so
unduly prejudicial that it renders the trial fundamentally
unfair."  Id. at 2608.

The evidence to which Wiley objects came from Turner's wife,
Marie.  She testified about the places she and her husband had
lived in Mississippi, his operation of the store, her assistance
in the law enforcement investigation, and Turner's character.
She agreed that Turner was not a violent or mean person, that he
was known in the community as "Mr. Good Buddy," and that he
occasionally loaned small amounts of money.  This evidence hardly
reaches the "unduly prejudicial" level required under Payne for a
constitutional violation.  Neither the evidence nor the
prosecutor's argument in this case comes anywhere near the
emotional appeal made by the prosecutor in Payne.  See id. at

---

[21]  Payne was decided more than one year after the district
court issued its memorandum opinion.

43

2603 (reciting testimony and prosecutor's closing argument). It is much more like the evidence and argument we found acceptable in Black v. Collins, 962 F.2d 395 (5th Cir. 1992), where there was testimony that the victim "was a hard-working, devoted wife and mother," and the prosecutor commented on the need of the victim's son for counseling. Id. at 408 & n.12. Accordingly, the district court correctly rejected this claim.

## VI. PREJUDICIAL PHOTOGRAPHS

Wiley argues that the introduction of photographs of Turner's body lying in a pool of blood and of Patricia Harvey's blood deprived him of a fair trial. On direct appeal, the Mississippi Supreme Court held that the photographs were sufficiently probative and did not simply have the effect of arousing the jury's emotions. Wiley II, 484 So. 2d at 346. On collateral review, the claim was held barred by res judicata. Wiley III, 517 So. 2d at 1377.

The district court refused to grant relief on this claim, holding that "[t]he federal habeas court's review of state evidentiary rulings 'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'" (quoting Mattheson, 751 F.2d at 1445; additional citation omitted). We cannot conclude that the photographs were so prejudicial as to render the trial fundamentally unfair. Although in the past we have recognized that photographs of the deceased may be relevant to the

44

"especially heinous, atrocious or cruel" aggravating circumstance, see Hill v. Black, 891 F.2d 89, 92 n.1 (5th Cir. 1989), vacated on other grounds, --- U.S. ---, 111 S. Ct. 28 (1990), invalidation of that factor does not necessarily mean that photographs of the deceased cannot be introduced. They certainly may be unnecessary, particularly in a case like this where guilt is not in issue and all that remains is the fixing of an appropriate sentence, but the question here is fundamental unfairness. The photographs were introduced to corroborate the testimony of the law enforcement officials who found Turner's body, and are not unusually gruesome. The State did not violate Wiley's rights by introducing them.


VII. CONCLUSION

Now that the U.S. Supreme Court has held that Maynard v. Cartwright and Clemons v. Mississippi apply to defendants whose sentences were decreed by judgments that became final before those decisions were rendered, this case must be returned to the Mississippi courts for a determination of the proper sentence. The Mississippi Supreme Court has indicated that state law bars it from reweighing remaining valid aggravating factors against mitigating evidence, but it has issued no such holding with respect to harmless error analysis. Accordingly, because it is not certain whether Wiley will receive a new sentencing hearing, we have, in the interest of judicial economy, addressed the

45

constitutional claims arising out of his 1984 sentencing trial. We reject these claims for the reasons set forth above.

The judgment of the district court is VACATED insofar as it holds that there was no constitutional error in the jury's use of the "especially heinous, atrocious or cruel" aggravating circumstance. The case is REMANDED to the district court with instructions to issue the writ of habeas corpus unless the State of Mississippi initiates appropriate proceedings in state court within a reasonable time after the issuance of our mandate. In all other respects, the judgment of the district court is AFFIRMED.